HANNAH BARNES AND JAMES J. WILSON *v.* L. B. DOW, HELEN DOW, SMITH HODGES, AND HENRY GIFFORD.

*Cross-Cause:* SMITH HODGES *v.* L. B. AND HELEN DOW, HENRY GIFFORD, J. J. WILSON, AND HANNAH BARNES.

*Cross-Cause:* HENRY GIFFORD, ADM'R OF J. E. MORSE'S ESTATE, *v.* L. B. AND H. DOW, SMITH HODGES AND J. J. WILSON, AND HANNAH BARNES.

[IN CHANCERY.]

*Will. Trust Estate. Mortgage. Beneficiary. Witness. Jurisdiction.*

1. BENEFICIARY. TRUST. MORTGAGE. A beneficiary under a will, who is entitled to a life support out of an estate held by a trustee, has no power to mortgage the estate; and a mortgage executed by such beneficiary and the remainderman, is valid only as against the latter, except so far as it secured money used in paying debts resting on the estate.

2. TRUST. SUBROGATION. INNOCENT PURCHASER. The testator gave by his will a life support to his sister, and secured it by a devise of his estate in trust to his executor, and the remainder to D., his nephew, thereby creating an active trust. The legatees executed a mortgage of the trust property to H. to secure a note for money, a part of which was used in paying the debts of the estate. The sister brought a bill alleging a failure to support and asking for a

foreclosure; the executor having deceased, his administrator brought a cross-bill, claiming a balance due from the estate; and H. answered and also filed a cross-bill, making the legatees and others defendants, praying for a foreclosure; *Held*, that H., having notice of the trust, was not an innocent purchaser; that he could not invoke the doctrine of subrogation; and that the beneficiary could not alienate the trust property, but that the mortgage should stand security for so much of the money as went to pay the debts of the estate.

3. WITNESS. R. L., ss. 1001-2-3. In a case involving the allowance of the account of a deceased trustee, whose administrator was orator in a cross-bill, and the succeeding trustee and two legatees, one a beneficiary having a life support, and the other a remainderman, were defendants, the remainderman was not a witness, under the statute, in his own behalf to disprove such account.

4. EVIDENCE. MEMORANDA. Memoranda in the day book of one deceased, and in his handwriting, are not admissible in favor of his estate.

5. JURISDICTION. Equity has jurisdiction, although there is pending in the County Court on appeal from the Probate Court a cause between the same parties and involving the same accounting; for (*a*) the account has equitable trusts attached to it; (*b*) the defendant prayed for an accounting in his cross-bill, and having invoked the aid of chancery he should not be heard to deny its jurisdiction; (*c*) the question was raised only by suggestion in argument; (*d*) and where a party is obliged to resort to chancery for one purpose the court will retain and dispose of the whole matter.

BILL IN CHANCERY. Heard on bill, cross-bills, answers, replications, concessions, master's report and exceptions thereto, May Term, 1885, TAFT, Chancellor.

It was decreed that the original cause be dismissed as to Hodges with costs, and that the orator have decree against the defendants in accordance with the prayer of the bill. In the cross-cause of *Hodges* v. *Dow* and others, decree for the orator with costs. In the cross-cause of *Gifford, Adm'r* v. *Dow* and others, it was decreed that there was due from the estate of James Morse to Wilson, trustee, the sum shown by the master's report, and that the same be paid with costs. It was further adjudged that the said Hannah Barnes should have a lien upon the personal property belonging to the Barnes estate in the hands of Wilson as against the said Dow and wife in the sum of $389, named in the report, and interest thereon. The orators in the original cause, and Gifford in all the causes, appealed.

The bill, as originally drawn, was in favor of Hannah Barnes against Lewis B. Dow and wife and Smith Hodges, complain-

ing that she had not been properly supported in accordance with the will of George Barnes, and asking for a foreclosure unless she was so supported.

After the case had been entered in court, Henry Gifford, as administrator of James Morse, entered as a party defendant, and claimed that there was a large balance due Morse's estate as executor of the last will and testament of George Barnes, and filed his cross-bill to have the same paid out of the estate. James J. Wilson was appointed December 5, 1883, by the Probate Court a trustee under the provisions of the will in place of James Morse, deceased, and said Wilson asked and was granted leave to enter as co-orator. Dow and his wife, Helen Dow, answered that Hannah Barnes had been properly supported ; but admitted that the facts as to giving the mortgage to Hodges were substantially as alleged by him in his cross-bill. Hodges also answered and filed a cross-bill setting forth that on the 17th day of August, 1878, he loaned $900, at the request of Morse and Dow and Hannah Barnes, upon a mortgage signed by Lewis B. Dow and Hannah Barnes ; that said money was obtained from him by representations and assurances that it was to be used to pay debts due from the estate of said Barnes ; that Hodges understood that he should have the first lien upon said real estate ; that it was supposed that the note signed by Dow, and the mortgage signed by said Dow and Hannah Barnes, constituted the first lien and incumbrance upon said real estate ; and further, that the money was used in paying claims allowed against said George Barnes' estate ; and praying that the money so advanced by Hodges be declared the first lien upon said real estate, for foreclosure, and also for general relief.

It was agreed by all the parties before the master that any amendment, answer or cross-bill, might be filed at any time necessary to equitably adjust all matters between them, and that the court might hear and determine the same as if they were already filed. It appeared from the report of the special master that George Barnes deceased in the month of Decem-

ber, 1876, leaving a will disposing of his estate, both real and personal, as follows :

" 2d. I give, devise, and dispose to my nephew, Lewis A. Dow, and his heirs, all of my effects or estate, both real and personal, except the support of my sister, Hannah Barnes, during her lifetime. And I give my estate in trust of my executor."

" 3d. I give to Hannah Barnes, my sister, her support during her natural lifetime out of my estate."

" And I do hereby appoint James E. Morse, of Royalton, Vermont, to be the executor of this my last will and testament."

Said will was duly probated and allowed, and said Morse accepted said trust as executor. James E. Morse settled his administration account with the estate February 13, 1882, and died in the month following.

Henry T. Gifford was appointed administrator of the estate of said Morse. On the 5th of December, 1883, James J. Wilson was appointed trustee under said will.

On the 7th of April, 1885, Wilson, as trustee, petitioned the Probate Court for a re-hearing and correction of the account of Morse as executor of the Barnes estate.

The matter was heard in Probate Court, and judgment and decree rendered therein, from which Wilson appealed to the County Court, which appeal is now pending.

The special master reported that he found two subjects of contention before him. One in relation to the giving a mortgage by Lewis B. Dow and Hannah Barnes to Smith Hodges. In respect to this it appeared that a short time before the 17th of August, 1878, Morse, as executor, claimed to desire to raise $800 to pay claims allowed against the estate of George Barnes. He consulted with Dow touching the matter, and they concluded that the whole estate of George Barnes, after the payment of the debts, belonged to the said Dow, subject to the support of the said Hannah Barnes ; and that the desired amount of money could be raised on a note given by Dow and

secured by a mortgage on the farm owned by said Barnes at his death, and that the mortgage should be executed by said Dow and Hannah Barnes.

As a result of these negotiations, on the said 17th day of August, 1878, Hodges let Dow have $900, and received his note for that sum payable on the 16th day of August, 1882, with interest annually.

The said Dow and Hannah Barnes on that day executed a mortgage to said Hodges to secure the payment of this note. Morse was one of the witnesses to this mortgage.

Hannah Barnes was at first unwilling to sign said mortgage; but when told by Morse that it was to raise money to pay debts of George Barnes' estate, and that the real estate was charged with that burden, and that it would make no difference to her, she executed the mortgage. She was advised to the same effect by the town clerk. Morse wrote the mortgage. Hodges was not present when the mortgage was executed, and never had any talk with Hannah Barnes in relation thereto.

Of the money raised by this mortgage, $496 was handed to Morse by Dow. Out of the remainder Dow paid debts of the estate amounting to $176.63, and also $35 for a burial casket in which George Barnes was buried. The total amount of debts thus paid by Dow to Morse and on the claims amounted to $706.65. In addition to this sum paid by Dow, he paid to one N. M. Russ a bill of $69.50 on a store account which Russ had against him for goods furnished and used by Dow on his said farm and in his family while said Hannah was a member of it, and receiving her support from him under the will. Dow also paid to one Cross for work on the farm the same year the sum of $69.55.

The balance of the $900 raised by said mortgage was used by Dow to buy a pair of oxen which he used on the farm. No payment on the mortgage note has ever been made.

It appeared that Dow lived on this farm from and after the death of the said George Barnes and that Hannah Barnes lived with and was supported by him until trouble arose, and she

left. The personal estate of the said George Barnes was inventoried at $2,305.85.

On the 4th day of November, 1878, Morse turned over to Dow of personal property belonging to the estate what was appraised at. $814.87; and this amount of property was in Morse's hands at the time of the execution of the mortgage to Hodges.

On the 10th day of December, 1883, Wilson, as trustee, took an inventory of certain personal property on the farm amounting, according to his estimate to $394.

The farming tools on the farm at the death of Barnes are still there, and their value kept equal to what it then was, namely, $170.25. That the household goods are still there, and worth their appraised value, $46.07.

The debts were nearly or quite paid by the 4th of November, 1878, and after that time, and up to the time when Wilson was appointed trustee, Dow managed the farm as his own.

Dow had the use and possession of the farm and stock from the death of Barnes to the appointment of Wilson as trustee, and carried on the same, using the avails for the support of his family and Hannah Barnes, while she lived with them, hiring help and paying it, and disposed of the avails for his own use except what he let Morse have.

Morse had paid out for the estate and had charges against it to the amount of $1,238. He had, at the same time, received from the estate, in cash, about $1,185. This did not include the personal property, amounting to $814.84, which Morse afterward turned over to Dow.

Neither Hodges, Hannah Barnes, or Dow, knew how the account between Morse and the estate stood on the 17th day of August, 1878.

When the mortgage was executed said Hodges, Dow and Morse understood that Hodges was getting the first lien on the real estate. All that Hannah Barnes knew about it was what Morse and the town clerk had told her, which was that the mortgage would not affect her, if Morse's representations were true.

Barnes v. Dow.

Another subject of contention before the special master was the account of Morse as executor.

The account, as examined and allowed by the Probate Court in February, 1882, showed a large balance due Morse from the Barnes estate. It was claimed by Wilson, and by Hannah Barnes and by Smith Hodges, that the account was erroneous, and if corrected would show a balance due from the Morse estate to the Barnes estate.

The master found several items, which he specified,. which should have been credited to the Barnes estate. The result of his findings was to bring the Morse estate in debt to the Barnes estate.

The solicitor for Gifford objected to any hearing as to the correctness of said Morse's account as executor, as said appeal to the County Court was then pending.

The master overruled the objection, and Gifford excepted.

Said Dow was used as a witness in his own behalf and in behalf of Wilson, who had become a party to this suit. Mr. Gifford, administator, objected to his testifying to anything transpiring prior to the death of Morse. The objection was overruled, and Dow was allowed to testify generally, and particularly as to what took place at the settlement of Morse's administration account at the time it took place in the Probate Court; to which Gifford excepted.

One James Barnes had an account against the estate of George Barnes, which was allowed by the commissioners, and which Morse charged the estate for paying, and it was claimed by Mr. Wilson that the claim was paid by said Dow and should not be charged in the account. At the hearing Dow was asked by Mr. Wilson who paid the claim allowed by the commissioners to James Barnes.

The witness answered that he paid it; to which question and answer Gifford objected. Similar questions were asked as to two similar items, to which like answers were made; also against the objections and exceptions of Gifford.

Dow was further asked by Mr. Wilson what was said to him

by Morse in relation to his paying claims against the estate. To this question Gifford objected and excepted.

The answer was that, " He told me if there were any claims I could pay them and take a receipt for them ; it would save him the trouble of going round."

Under like objection and exception Dow was allowed to testify at great length in respect to his dealings with Morse as executor, and the property of Barnes prior to the decease of Morse.

In the progress of the hearing on the part of Gifford as to item 11, he produced a book claimed to be in Morse's handwriting, and which he called his day-book. The master so found.

The following two entries in said book were offered in evidence, but were excluded :

(1) " Signed note with Dow to bank—200—he had the money to pay Hannah Barnes' commissioners' account allowed, and I paid the note, except what money I got from M. S. Adams for lumber."

(2) " See Dow about bank note, which money he had to pay Hannah, and I paid note."

The first of said entries appeared on the book under date of November 4, 1878 ; the second under date of December 28, 1878.

It was agreed that the estate of George Barnes failed to support Hannah Barnes, agreeably to the provisions of said will, for the years 1880, 1881, 1882, and until December 12, 1883, and that the support so withheld was worth $389 ; and that, although a portion of the support was withheld since the commencement of this suit, the court could adjudge that said Hannah should have a lien on the money and personal property in the hands of the trustee, Wilson, for security of the payment of said sum by said Dow, or make such further order as the case may require.

*J. J. Wilson,* for orators in the original bill.

The court having jurisdiction of a portion of the matter in

controversy, will retain and dispose of the whole ·case. The defendant Gifford, on the ground that his testator, Morse, is dead, objects to Dow as a witness.

To exclude a party to the record as a witness, it must appear that he is a party to the original contract or cause of action in issue and on trial. *Shailer* v. *Bumstead*, 99 Mass. 112 ; *Morse* v. *Low*, 44 Vt. 561.

In this case Dow and wife, Hodges, Hannah Barnes and Wilson, were all legal witnesses on the accounting between the estate and Morse in the Probate Court, but now they claim that Gifford by his cross-bill and aid of this statute has disqualified them all. *Thrall* v. *Seward*, 37 Vt. 579 ; *Fitzsimmons* v. *Southwick*, 38 Vt. 514 ; *Benoir* v. *Paquim*, 40 Vt. 199 ; *Hollister* v. *Young*, 41 Vt. 160 ; ·*Walker* v. *Taylor*, 43 Vt. 616 ; *French* v. *Eaton*, 49 Vt. 471.

The contract in issue, about which Dow testified, was raised by Gifford's cross-bill, and the answers thereto of Barnes and Wilson.

The contract in issue was, Did the Barnes estate owe the Morse estate ? Or, to be more precise, Was there an implied contract that the Barnes estate should pay the Morse estate the three claims named in said report? *Downs* v. *Belding*, 46 Vt. 677 ; *Morse* v. *Low*, 44 Vt. 361 ; *Cole* v. *Shurtleff*, 41 Vt. 311 ; *Bank* v. *Schofield*, 39 Vt. 590 ; *Cheney* v. *Peirce*, 37 Vt. 528 ; *Taylor* v. *Finley*, 48 Vt. 81.

Parole memoranda in a pass-book or elsewhere are not admissible as independent testimony. *Lapham* v. *Kelley*, 35 Vt. 195 ; *Jewett* v. *Winship*, 42 Vt. 204 ; *Cross* v. *Bartholomew*, 42 Vt. 206 ; *Paris* v. *Bellows*, 52 Vt. 353.

The testator's intention is evident, as shown by the will. He intended to provide a support for his sister during her life. The residue of his estate was to go to his nephew.

He intended to make his sister's support sure and certain, so he conveyed his whole estate to his executor in trust.

The title of the estate was in the trustee. *Holdship.* v. *Paterson*, 7 Watts, 551 ; 3 Watts & Serg. 330 ; Swift Dig.

121. Neither trustee nor the *cestui que trust* could divest this property from the appointed purposes. 1 Perry Trusts, s. 386; *White* v. *White*, 30 Vt. 338; *Van Amee* v. *Jackson*, 35 Vt. 178; *Perkins* v. *Hays*, 3 Gray, 405.

This same doctrine is held in *Whiting* v. *Whiting*, 4 Gray, 237; *Hall* v. *Williams*, 120 Mass. 345; *Bank* v. *Adams*, 133 Mass. 170; *Foster* v. *Foster*, 133 Mass. 179; 105 Mass. 425; 59 Pa. St. 393; 47 Pa. St. 113.

The trust fund was not attachable. *Keyser* v. *Mitchell*, 67 Pa. St. 473; *Vaux* v. *Park*, 7 Watts & Serg. 19; 31 N. Y. 1; *Lock* v. *Mabbell*, 3 Abb. Ct. App. 69; *Wetmore* v. *Truslow*, 51 N. Y. 338. Hodges could not invoke the doctrine of subrogation. *Bank* v. *Cushing*, 53 Vt. 327; Sheld. Sub. 1 and 240; 40 Vt. 408.

*D. C. Denison & Son*, for Gifford.

The master erred in hearing the question of the correctness of Morse's account.

This question is for the Probate Court, and trustee has applied to that jurisdiction for relief, and has taken this question to the County Court by appeal, where said cause now is. *Glastenbury* v. *McDonald*, 44 Vt. 450.

No court will interfere with a judgment of another of competent jurisdiction.

The master erred in admitting defendant Dow as a witness.

The cause of action in issue and on trial is the account of J. E. Morse, executor of George Barnes. Dow is a party thereto, and by the statute is excluded. R. L., s. 1002; *Woodbury* v. *Woodbury Est.* 48 Vt. 94; *Cole* v. *Shurtleff*, 41 Vt. 311; *Pember* v. *Congdon*, 55 Vt. 58; *Hollister* v. *Young*, 41 Vt. 156; *Jewett* v. *Winship*, 42 Vt. 204; *Man'f. Bank* v. *Schofield*, 39 Vt. 590; *McKillop* v. *Jackman et al.* 50 Vt. 57; *Blair* v. *Elsworth*, 55 Vt. 415; *Fitzsimmons* v. *Southwick*, 38 Vt. 509, 515; *Johnson, Adr.*, v. *Dexter*, 37 Vt. 641.

*William E. Johnson*, for Hodges and Dow and wife.

We claim that under the will the legal title was in Lewis B.

Dow. The gift is absolute in its terms, and a subsequent clause repugnant thereto is void. If we are right on this point then the mortgage is valid without doubt. But if the court should think that the legal title, by the terms of the will, was in Morse, the executor, then we claim the mortgage valid.

It is certain that the trustee and the *cestui que trust* together could mortgage or. convey the premises. *Pownal* v. *Myres*, 16 Vt. 414; *Flint* v. *Steadman*, 36 Vt. 211.

That is, the trustee, with the consent of the *cestui que trust*, could convey.

The act must be the act of both.

Certainly Hannah Barnes is not entitled to any consideration so far as Hodges' rights are concerned; for she signed the mortgage, and thereby induced and led Hodges to part with his money when he otherwise would not. It seems to us that the principle that where one of two persons must suffer that one must bear the loss who was in fault, may, in this view, apply.

Relief is granted not only against the original parties to the contract, but against all claiming under them in privity, heirs, devisees, etc. Adams Eq. s. 168, n. 2 : *Beardsley* v. *Knight*, . 10 Vt. 185.

Equity will grant relief when both parties intended to have an instrument prepared in one form, and by means of some omission it was prepared in another. Adams Eq. s. 170 ;— omission to affix a seal to a bond. *Rutland* v. *Paige*, 24 Vt. 181 ;—or omission to make a bond payable to the obligor's assignees. *Smith* v. *Wainright*, 24 Vt. 97, 111.

Equity often grants relief against pure mistakes of law. 1 Story Eq. ss. 121, 118, 138, and note.

Morse and Mrs. Barnes are estopped. Bigelow Est. 434.

Whether the instrument is strictly a mortgage or not, it is an appropriation of the real estate for the payment of this debt of Hodges; and courts of equity will carry out the intention of the parties by making the property holden. *Frary* v, *Booth*, 37 Vt. 89, 90.

Barnes v. Dow.

The debts due from the Barnes estate were, of course, a first claim, and stood prior to the rights of Dow or Hannah Barnes.

In the same claim also must stand the expenses of carrying on the farm and the support of Hannah Barnes.

This money of Hodges went to pay these claims.

The opinion of the court was delivered by

VEAZEY, J. It seems plain, from the language of the will as a whole, that it was the intention of the testator to provide a life support for his sister Hannah out of his estate, and to secure it by a devise of his estate in trust to his executor; and then to give the remainder to his nephew, Lewis A. Dow. The language is awkward, but the meaning clear. The devise to Dow and to the executor would be inconsistent but for the exception in behalf of Hannah in the devise to Dow, followed by the direct gift to Hannah in the same paragraph. It created an active trust in the executor for special use, viz., the support of Hannah during her life, and that was to be the end of the trust. The provision is: "I give to Hannah Barnes, my sister, her support during her natural lifetime out of my estate." There was no limitation to income. It was a gift of support. The gift to Dow was the estate, except this support. There was nothing for him except what was left after the support. The trust in the meantime was not to him, but to the executor. The legal title pending the trust could not be in both. Unless it was in the executor as trustee, there was no trust; yet the form of the gift to Hannah necessitated a trust. We think the language of the will imports an unmistakable intention of a permanent and indefeasible provision for a life support of Hannah out of the estate. This intention could not be carried out without upholding the clause which put the legal title in the executor in trust. Dow therefore could make no conveyance to affect the title until the trust terminated. The object of the gift to Hannah was such as to exclude the idea of alienation on her part. A life support must be as lasting and

continuing as life. It was in amount indefinite and indeterminate. Hodges does not stand as an innocent purchaser, as he had notice of the trust.

This case, as we construe this will, comes within a recognized and settled exception to the general rule that the law does not allow property, whether legal or equitable, to be fettered by restraints upon alienation. The rule constituting the exception is thus formulated by Perry in his work on Trusts: " But a trust may be so created that no interest vests in the cestui que trust; consequently, such interest cannot be alienated, as where property is given to trustees to be applied in their discretion to the use of a third person, no interest goes to the third person until the trustees have exercised this discretion. So if property is given to trustees to be applied by them to the support of the cestui que trust and his family, or to be paid over to the cestui que trust for the support of himself and the education and maintenance of his children. In short, if a trust is created for a specific purpose, and is so limited that it is not repugnant to the rule against perpetuities, and is in other respects legal, neither the trustees, nor the cestui que trust, nor his creditors or assignees, can divert the property from the appointed purpose. Any conveyance, whether by the operation of law or by the act of any of the parties, which disappoints the purposes of the settlor by diverting the property or the income from the purposes named, would be a breach of the trust. Therefore, it may be said that the power to create a trust for a specified purpose does, in some sort, impair the power to alienate property." Perry, vol. 1, s. 386a, (2d ed.) See cases cited in note 3, and in the brief of the trustee on this point. SHARSWOOD, J., in Rife v. Geyer, 59 Penn. St. 396, says: " Wherever it is necessary for the accomplishment of any object of the creator of the trust that the legal estate should remain in the trustee, then the trust is a special active one; " and it was there held that " a benefactor has the power by means of a trust to restrict his bounty so that it shall not be liable to the debts, control or engagements of the beneficiary.

A trust of this nature is of necessity an active trust, requiring the legal title to be vested in the trustee."

If it appears from the will that it was the intent of the testator that the beneficiary should have nothing . that she could dispose of, it will be as effectual to protect the trust as if there was an express clause against alienation. *Keyser* v. *Mitchell*, 67 Penn. 473 ; *Perkins* v. *Hays*, 3 Gray, 405.

Neither can a creditor of a beneficiary, standing as Hannah Barnes does in this case, reach his or her interest. *Van Amee* v. *Jackson and Ketcham*, 35 Vt. 173 ; and see cases cited in trustee's brief.

The defendant Hodges is in no situation to invoke the doctrine of subrogation, as he was simply a volunteer and without any special agreement binding upon the trustee and beneficiary so far as related to the property. *Bank* v. *Cushing*, 53 Vt. 321.

The question is not what would be equitable as between the beneficiary and the mortgagee, but as to the right of the beneficiary to alienate the property so as thereby to defeat the trust. This trust could be defeated only by a sale by the trustee to a purchaser without notice of the trust, and this would impose a personal liability on the trustee. The settlor impressed upon his own property a trust quality for a purpose legal, commendable, and without wrong to any one, and died. His death closed the door to any such invasion of his purpose, as this case shows was attempted.

As an attempt to convey the property by the beneficiary to a party with notice of the trust, the transaction must fail, and it can stand only as against Dow and his interest.

But the debts against the Barnes estate were prior to any right of the legatees, and were chargeable against the estate ; therefore, in so far as the money borrowed of Hodges went to pay the debts which Morse, as executor, was bound to pay, it would be just that Hodges should be reimbursed. This money was borrowed by Dow at the instance of Morse and with the assent of Hannah Barnes, to be applied in payment of debts, and was loaned by Hodges for this purpose, all parties appar-

ently acting in good faith, and the money was to large extent thus appropriated. As the estate got the benefit of the money in part in the discharge of the trust by Morse, and without detriment in any respect, it should be returned to the lender to the extent that it relieved the estate. The estate should not be enhanced at the expense of Hodges who acted in good faith. By returning the money to Hodges to the extent that it benefited the estate by going into the hands of the executor, and being used and accounted for by him, or being used by Dow with his assent in behalf of the estate, the trust is not depleted, and the estate is left as it would have been if the money had not been borrowed. By this the beneficial purpose of the settlor will not be defeated, and no wrong done to any one.

The balance of the $900 borrowed was used by Dow. He claims it also went to the benefit of the estate, but we do not think this so clearly appears as to warrant making it a charge against the estate.

Another subject of contention before the master and here was in reference to the correctness of Morse's account as executor of Barnes' estate. Morse had died and Gifford was the administrator of his estate, and presented Morse's account as executor before the master. Dow was improved as a witness in his own behalf and in behalf of Wilson's trustee. Gifford seasonably objected to Dow's testifying to anything that transpired before the decease of Morse. The objection was overruled, and Dow was allowed to testify that he paid certain items of charge against the Barnes estate in Morse's administration account, in pursuance of an arrangement to that effect with Morse; to which Gifford excepted.

Our statutes first provide that interest shall not disqualify a witness; then that where "one of the original parties to the contract or cause of action in issue and on trial is dead, * * * the other party shall not be admitted to testify in his own favor, except," etc.; also "when an executor or administrator is a party, the other party shall not be permitted to testify in his own favor, unless," etc., ss. 1001–2–3, R. L.

It is insisted that the testimony of Dow was not upon a contract or cause of action in issue and on trial, but was upon a collateral question; therefore, Dow was a competent witness.

The general question in issue and on trial in this branch of the case was this : What items in Morse's account as executor should be allowed? It was a contention primarily between the two estates, but Dow had come into it as a party, and was interested in the result. Dow testified that certain items of charge for cash paid on claims allowed against the Barnes estate were paid by him, and this was offered for the purpose of having them disallowed. If Morse paid them they should stand. If Dow paid them they should be cut out. Morse was dead. If the question was collateral, then Dow was a competent witness, as repeatedly decided in this State.

It has been held that the words, contract in issue, as used in the statute, mean the same as contract in dispute or in question, and relate as well to the substantial issues made by the evidence as to the mere formal issues made by the pleadings. *Hollister* v. *Young*, 42 Vt. 403 ; *Pember* v. *Congdon*, 55 Vt. 58. It was undoubtedly the intention of the statute, after the disqualification of interest was removed, to preserve equality in evidence between parties to contracts, so that when controversies arose over them in court the representatives of a deceased party would stand on the same footing with the survivor. So it was held in *Ins. Co.* v. *Wells*, 53 Vt. 14, that the maker of a note could not testify to a payment to the payee while he was alive, though the latter had transferred the note before his decease to the plaintiff; and *Hollister* v. *Young*, 41 Vt. 156, was cited, wherein it was held that the assignee of a contract or cause of action, made or existing between the defendant and the deceased party, is entitled to stand upon that proviso of the statute against testimony of the surviving defendant, even though the estate or heirs of the deceased had no interest in the subject-matter of the suit. It has been repeatedly held in Missouri, and lately in *Meier* v. *Thieman*, 7 Western Reporter, 141, that the words " the other party "

35

refer, and can only refer, to the other party to the original contract or cause of action, and not necessarily to the party to the record. SHERWOOD, J., there says: "Whether party to the record or not, makes no difference as to the statutory incompetency of the witness; he is prohibited from testifying in his own favor in any case whatsoever where the other original party to the contract or cause of action in issue and on trial is dead. The letter of the statute makes no distinction as to the status of the witness on the record; the rule of his exclusion is as broad as the contract or cause of action in issue and on trial, and his testimony in his own favor. And the reason, policy, and spirit of the rule keep pace with its letter." On this point Wharton tersely says: "The reason of this exception is, that where there is no mutuality there should not be admissibility; *i. e.*, when the lips of one party to a contract are closed by death, then the other party should not be heard as a witness. * * * Much, however, as the statutes may differ in words, they are the same in purpose. That purpose is to provide that when one of the parties to a litigated obligation is silenced by death, the others shall be silenced by law." 1 Whart. Ev. s. 466.

Although this doctrine may not yet have been reached in our decisions, its justice and logic would seem to compel its ultimate adoption. But in this case all embarrassment on this point is obviated by the fact that Dow is a party to the record.

Dow not only testified to paying these items, but also to his arrangement with Morse that he should pay them. His testimony was: "He, Morse, told me if there were any claims I could pay them, and take a receipt for them; it would save the expense of his going around." The evidence made a substantial issue between Dow and the Morse estate. There was no issue over the validity of the items. The question was as to whether Morse had paid them. The defence was that he had arranged with Dow to pay them, and that the latter had paid accordingly.

We think the cause of action in issue and on trial as it took shape as to these items was one in substance between Morse's estate and Dow, and that Dow was incompetent as a witness in his own favor.

That the master properly excluded the entries on Morse's book showing memoranda in his own favor, is settled by numerous decisions. *Godding* v. *Orcutt*, 44 Vt. 54; *Lapham* v. *Kelly*, 35 Vt. 195.

The objection to the court inquiring into the matter of Morse's account owing to the pendency of the appeal in the County Court from the allowance of the Probate Court, is not well taken. No question is made but that the consideration of this account is raised by the pleadings. No claim is urged that the settlement of the Morse account in his lifetime is conclusive. The only objection alleged is the pendency of the same matter on appeal in the County Court. The appeal vacated the allowance of the Probate Court. *Probate Court* v. *Gleed*, 35 Vt. 24.

The mere pendency of an action in one court is not in all cases a bar to another action for the same cause between the same parties in another court. *Stanton* v. *Embrey*, 93 U. S. 548; *Ins. Co.* v. *Brune's Assignee*, 96 U. S. 588; *Gordon* v. *Gilfoil*, 99 U. S. 168. Many other cases could be added.

The Court of Chancery had jurisdiction of this cause not on account of this feature of it, but on other grounds; and this feature is a mere incident, but necessary to be settled in order to a final relief between all the parties to the cause. Therefore, although the Court of Chancery does not interfere in the settlement of estates, as that pertains to the Probate Court, except in aid of that court; yet the case seems to come within the general rule that where a party is obliged to resort to chancery for one purpose that court will retain and dispose of the whole matter, although in some of its aspects a legal remedy exists. If there be doubt as to whether that rule is applicable on the ground that the general limitation of the rule is to cases brought purely for discovery in first instance, we think

it is cured here by the fact that Gifford in his cross-bill prays for an accounting and for general relief. Having invoked the aid of chancery, he should not be heard to deny the jurisdiction. The objection was not raised by plea, but came as a suggestion in argument.

There is another rule tending to support the jurisdiction that where an account has equitable trusts attached to it, there is clear ground for equitable jurisdiction. Story Eq. Jur. s. 454.

Morse was trustee under the will as well as executor, and his account covers both aspects of his administration, although in name it stands as his account as executor.

Decree reversed, and cause remanded with mandate.