JACOB ROBERTS, JUNIOR, and another, in equity,

*vs.*

WILLIAM H. H. STEVENS, and another.

Penobscot.     Opinion March 10, 1892.

*Will.    Creditor's Bill.    Equitable Attachment.    Spendthrift Trust.    Alienation.
R. S., c. 68, § 7; c. 77, § 6, cl. 10.*

A testator may so give to his son for life the annual income of a trust estate, that the life tenant cannot alienate or his creditors reach it.

To be effective such must be the clear intention gathered from the whole will construed under the light of circumstances.

ON REPORT.

This was a creditor's bill to reach, and satisfy in payment of plaintiffs' judgment, the income of the defendant Stevens in the hands of his co-defendant, executor of Stevens' father's will; also to enjoin payments from the estate to Stevens.

The case is stated in the opinion.

*Laughton, Clergue and Mason,* for plaintiffs.

Jurisdiction: R. S., c. 77, § 6, cl. 8, 10; 1 Sto. Eq. 33.

An absolute, vested, equitable estate is assignable and liable to claims of creditors of the *cestui que trust*; and a vested, equitable estate can be rendered non-assignable and removed from the reach of creditors only by the expressed intention of the founder of the trust.     Counsel cited and commented upon: *Sparhawk* v. *Cloon,* 125 Mass. 263; *Lord* v. *Harte,* 118 Mass. 271; Perry on Trusts, § § 386, 386 a, 388; 2 Sto. Eq. § 974, 974 a; *Palmer* v. *Stevens,* 15 Gray, 343; *Ames* v. *Clark,* 106 Mass. 573; *Nichols* v. *Levy,* 5 Wall. 433; *Nichols* v. *Eaton,* 91 U. S. 716; *Hyde* v. *Woods,* 94 U. S. 523; *Spindle* v. *Shreve,* 111 U. S. 546; *Broadway Nat. Bank* v. *Adams,* 133 Mass. 170; Gray's Restraints, § § 134, 277, 279.

*Appleton and Chaplin*, for defendant Stevens.

VIRGIN, J. The complainants are judgment creditors of the defendant Stevens, and the executor of the will of Stevens' father is the other defendant.

The remainder of the estate of the testator, after the payment of certain legacies, was given to his executor, to hold in trust during the lives of his three sons and of certain life annuitants.

After the payment of the life annuities from the income of the trust estate, the testator directed the remainder of such income to be divided among his living sons, (of whom the defendant is one,) and the families of such of his sons as might have deceased and left one child or more, until the expiration of the trust. After the trust was terminated the remainder of his estate was to go to his grandchildren equally.

The bill, founded upon R. S., c. 77, § 6, cl. 10, seeks to reach and apply, in payment of the complainants' judgment, Stevens' income of the trust estate, as the same is received by the trustee, until their debt with interest and the costs of this suit shall be satisfied; and in the meantime to enjoin the trustee from paying the life tenant.

The decision of two questions is involved : (1,) Does a proper construction of the will disclose the testator's intention to secure to his son the life enjoyment of the income of a trust estate and its immunity from his son's creditors; and (2,) If it does, can that intention be made effectual.

The clause in the will principally relied upon by the defendant is as follows :

"And I hereby enjoin it upon all legatees, annuitants and other parties interested in the provisions of this will, not to make any arrangement or any agreement for a change in such provisions of the trust under this will, or to assign, or in any way, directly or indirectly, to transfer or make over any claim or rights they may have by virtue of this will, or to pay to any other person any legacy or annuity or any part thereof, than to such persons as are entitled to the same by virtue hereof, on the penalty of the forfeiture of the property or sum so assigned or paid, to go to that part of my estate which is applied to the

benefit of those persons interested under the residuary clauses
of this will, other than such as shall make said payment or
assignment."

`   The particular prevailing intention which permeates and per-
vades these verbose provisions seems to be that the testator's
property shall go not only in sums as he had thereinbefore
directed, but to the identical persons named and to no others.
To be sure, none of the provisions declares *in totidem verbis* that
his son's interest in the trust estate shall be without the reach
of his creditors.   Nor are such express words essential though
many wills contain them.   Generally, wills are to be construed
in accordance with the intention of the testator gathered from
the whole instrument construed in the light of circumstances.
*Fox* v. *Senter*, 83 Maine, 295 ; *Postlethwaite's App.* 68 Pa. St. 477.

In the analogous cases of vesting property in a married
woman for her separate use and disposal, the whole current of
authority holds that no particular form of words is necessary.
The intention though not expressed in terms, may be inferred
from the nature of the provisions annexed to the gift.   "The
court will examine the whole instrument and look rather to the
intent manifested than to the language employed." *Lippincott*
v. *Mitchell*, 4 Otto, 770 ; *Bland* v. *Davis*, L. R. 17, Ch. D. 794,
797 ;  Pom. Eq. § 1102, and notes for various expressions held
sufficient in English and American cases.   *Hulme* v. *Tenant*,
and notes in 1 Lead. Cas. Eq. *394.

The same rule applies to equitable life estates in this country.
Thus in *Baker* v. *Brown*, 146 Mass. 369, the court say that
the provision securing the income of a trust against alienation,
voluntary or involuntary is "sufficient if the intention is clearly
gathered from the instrument when construed in the light of cir-
cumstances," which is repeated in *Slatterly* v. *Wason*, 151
Mass. 266.   See also *Maynard* v. *Cleaves*, 149 Mass. 307.
"If it appear from the will," said Veazey, J., "that it was the
intent of the testator that the beneficiary should have nothing she
could dispose of, it will be as effectual to protect the trust as if
there were an express claim against alienation." *Barnes* v. *Dow*,
59 Vt. 530, 543.   So where the trustee was to collect the rents and

profits and " pay the same into the testator's son's own hands and not into another's whether claiming by his own authority or in any other capacity," the income was held to be free from the claims of alienees or creditors.  *Smith* v. *Towers*, 69 Md. 77.

In *Grothe's App.* 135 Pa. St. 586, 596, decided in 1890, where the balance of a certain share of the testator's property, after deducting taxes, etc., was given to a trustee to pay the interest annually accruing thereon to one of his sons, named, and there was no clause protecting the income from attachment, the court, construing the will in the light of all the circumstances surrounding the testator, the son's insolvency, etc., held that the income was exempt from the son's creditors, "though such intent was not clearly expressed by the scrivener."

What did the testator intend by the verbose provisions before quoted?  What did he intend to be subject to the penalty of forfeiture, and under what circumstances?

The injunction is imposed upon " all legatees and annuitants," (1,) " not to make any arrangement or agreement for a change in the provisions of the trust," or (2,) " to assign, or in any way, directly or indirectly, transfer or make over any claim or rights they may have by virtue of this will."  In other words, that no one entitled to a benefit under the trust or any other provision of the will, shall make any disposition of whatever he is thereby entitled to, otherwise than as the will directs.  Or, as in *Smith* v. *Towers*, *supra*, each benefit shall be received in the beneficiary's own hands and in no others.  The evident design was that no beneficiary, upon whom the testator bestowed his bounty, should alienate it voluntarily or involuntarily; for involuntary alienation is an indirect assignment, transfer or making over of property.  A son who needs protection from his own improvidence, or incapacity for self protection, might very readily evade the restriction by creating a formal debt and allowing his *quasi* creditor to secure it by a bill of this character upon " any claim or right" which the willing or overreached debtor might have by virtue of the will of his father, and thus "indirectly assign" what was intended for his sole personal benefit.

Moreover, the injunction is not limited to "legatees and annuitants" but it includes "all other parties interested in the

provisions of this will." Whom did the testator thereby mean?
"All legatees" might well be considered as including his sons
among others; for the gift of the income of a particular fund
for life is a legacy. Wms. Exr's, (6th Am. ed.) 1192, 3 & 4
and note *n.* If there were any doubt that he meant thereby to
include them, they were evidently included in "other parties
interested," etc.

Furthermore, the answer shows that the property given to the
executor in trust was stores in Bangor. And since the trustee
has the responsible duties of caring for, managing the property,
collecting the rents and profits thereof and paying over the net
proceeds to the respective beneficiaries, the trust is an active
trust (Pom. Eq. § 992); the trustee holds the legal title of the
corpus of the property by virtue of the devise to him (R. S., c.
68, § 7); and he is entitled to reasonable commissions for the
faithful discharge of such duties. While, therefore, the trustee
may not, in the technical sense, be "interested" as a beneficiary—
that term is not contained in the clause — the testator evidently
did include him among the "parties interested in the provisions
of the will."

The very next clause in the injunction would seem to make it
reasonably certain that the testator had the trustee in his mind
when he dictated it. For not only does he enjoin the "legatees,
annuitants and other parties not to assign, transfer," etc., but he
then goes further and enjoins somebody among those thus des-
ignated, not to "pay any part of the legacy or annuity" to any
person other than such as are entitled under the will. That
language was selected by the testator to carry out some purpose
which he had in view, and it must be given some meaning.
No one mentioned in the will other than the trustee could "pay"
any part of a legacy or annuity to any person other than the
rightful beneficiary. Payment of a legacy could only be made
from the income of the trust property, and the trustee alone had
the control of the funds. When a legacy or annuity was once
paid by him to the party entitled, the latter might then use the
money as he saw fit. It was then, and not before then, the
beneficiary's absolute property. *Broadway Nat. Bank* v.

*Adams*, 133 Mass. 170.   It was no longer a legacy or an annuity or any part thereof.   Its identity was gone.   For whatever purpose, or to whomsoever the beneficiary might upon receiving it thereafter dispose of it, his act could in nowise be deemed in contravention or an evasion of the injunction.   That was fully complied with when the beneficiary received what belonged to him, and it was no longer subject to any provision of the will.

Again, the earlier provision in the will directing his executors to "pay to" certain persons named, "any amount that may be due them from" his two other sons, "said sums so paid to be deducted from their interest in his estate," affords additional evidence that the testator did not intend that the trustee should pay the defendant-son's debts.

But it is said that this construction would empower the trustee *suo motu* to forfeit the interests of all the particular beneficiaries to the residuary legatees.   Not so.   For such an act on the part of the trustee would be a gross violation of his trust and a fraud upon such beneficiaries.   *Draper* v. *Stone*, 71 Maine, 175, 178 ;  *Ash* v. *Hare*, 73 Maine, 401, 403 ;  *Smith* v. *Bowen*, 35 N. Y. 83.   Any such attempt could be enjoined. Adams Eq. 207.   No act of a trustee can operate to destroy the interest of the *cestui que trust*, without the latter's consent. *Hatz's Appeal*, 40 Pa. St. 209.   If the trustee should, with the defendant's consent, pay, when due and payable, any part of the latter's interest, to another person, the sum so paid might possibly become forfeited in accordance with the provision of the will.   But if paid without such consent, such payment would be a violation of the trust on the part of the trustee and the sum so paid would not become forfeited, but the trustee would be obliged to make it good.   Sto. Eq. § 1263.   We are of opinion, therefore, that the testator did intend to restrain not only his defendant son from alienating his interest under the will, but also the trustee from paying any part thereof to any other person.   Such being the fair construction of the will, this court will not direct the trustee to act in contravention of such construction, and thereby substitute its own will for that of the

testator, unless these provisions of the will shall be found to be unwarranted by the law.

Are they unlawful? There is neither any decision of this court nor statutory provision in this State pertaining to the subject. There is a conflict among the authorities in this country, though in England they all seem to be opposed to any such restrictions as the testator made. The latter authorities hold in substance that the interest of a life tenant cannot continue to exist without its incidents among which is that of alienation ; and that a creditor of a *cestui que trust* can reach in equity whatever the latter has the right to demand from his trustee. In *Brandon* v. *Robinson*, 18 Ves. 429, money was invested in the names of trustees, the income to be paid into A's own hands to the intent that the same should " not be grantable, transferable or otherwise assignable by way of anticipation," with a gift over on A's death. On A's becoming bankrupt, the assignees were held entitled to his interest. This decision was preceded and followed by numerous others to the same purport.

But while the decisions in several of the state courts are in accord with the English rules, others together with two of the federal Supreme Court uphold such trusts. And the legislatures of four or five states sanction their validity by express statutes, though Kentucky by legislative enactment forbids them. *Parson* v. *Spencer*, 83 Ky. 386. But whatever may be the decisions in England and some of the state courts, the other view held by the United States Supreme Court and other state courts is more in accordance with our own which we think may be properly based upon either of two grounds.

The general rule, that rights incidental to ownership of property attach alike to equitable and legal estates, has been materially modified by equity. In direct antagonism to, and for the avowed purpose of evading what were deemed certain, harsh and unjust dogmas of the law, equity called into existence an estate which enabled a married woman to hold equitable interests in property independently of her husband's control. But as this estate brought with it the enjoyment of all its incidents including the right of alienation, an unsatisfactory and imperfect pro-

tection was thereby afforded her because of the influence and moral coercion of her husband. It was, therefore, deemed essential to go further and modify this estate by inserting in settlements and wills a clause restraining the wife from anticipating or alienating her separate property. This was first done in a certain settlement by advice of Lord Thurlow, who was a trustee. *Pybus* v. *Smith*, 3 Bro. C. C. *340 (Perkins' ed.), and note. And the reason why she can thus be restrained, as stated by Cotton, L. J., is "because equity can modify the incidents of a separate estate which is the creation of equity." *Pike* v. *Fitzgibbon*, L. R. 17 Ch. D. 454. This doctrine has been repeatedly stated in numerous cases. In *Tullett* v. *Armstrong*, 4 Myl. and Cr. 377, Lord Cottenham, C., said : "The power to prohibit anticipation could only have been founded upon the power of this court to model and qualify an interest in property which itself had created." . . . "The separate property and the prohibition of anticipation are equally creatures of equity and equally inconsistent with the ordinary rules of property. The one is only a restriction and qualification of the other." . . " When this court first established the separate estate, it violated the laws of property as between husband and wife ; but it was thought beneficial and it prevailed. It being once settled, that a wife might enjoy separate estate as a *feme sole*, the laws of property attached to the new estate ; and it was found, as part of such law, that the power of alienation belonged to the wife and was destructive of the security intended for it. Equity again interfered, and by another violation of the laws of property, supported the validity of the prohibition against alienation." Thus the doctrine was placed upon the long, and well recognized, broad ground that a court of chancery had the inherent power to modify estates of its own creation.

In the absence of any statute or decision in this State to the contrary, we have no hesitation in extending the principle to cases like the present. This view is sustained by a very able opinion of the Supreme Court in Missouri ; and in closing this branch of the case we can do no better than adopt the language of Sherwood, J., in that case : "If a court of equity, in order

to protect one class of trusts, creatures of its own creation, and by so doing to effectuate the intention of the author of the gift, exercises its own inherent power to model and qualify an interest in equitable property without regard to the rules which the law has established for regulating the enjoyment of property in other cases, it is difficult to see why, with a like object in view, *i. e.*, the effectuation of the gift just as its author intended it to be effectuated, such court may not lay down and declare a rule, in such a case as this, which shall be equally effectual in preventing the intention of the donor from being thwarted—a rule which injures or defrauds no one, which violates no rule of public policy, and which gives stability and protection to a provision which, originating in the warmest ties of affection, seeks to afford to the beneficiary a sure and unfailing refuge against the vicissitudes of fortune. If a court of equity, as already seen, will guard such a trust in one case with jealous solicitude, why should it fail to do so in another, in circumstances equally meritorious?" *Lampert* v. *Haydel*, 96 Mo. 439.

Another view, arriving at the same result, is taken by the highest court in the country as well as by the Supreme Courts of several of the states in the Union. Thus Miller, J., said : "We see no reason, in the recognized nature and tenure of property and its transfer by will, why a testator who *gives* without any pecuniary return, who gets nothing of property value from the donee, may not attach to that gift the incident of continued use, of uninterrupted benefit of the gift during the life of the donee. Why a parent, or one who loves another, and wishes to use his own property in securing the object of his affection, as far as property can do it, from the ills of life and the vicissitudes of fortune, and even his own improvidence or incapacity for self-protection, should not be permitted to do so." *Nichols* v. *Eaton*, 91 U. S. 716, 727. See also *Hyde* v. *Woods*, 94 U. S. 523.

"Spendthrift trusts" were created in Pennsylvania in Chief Justice Gibson's time and have been approved by numerous decisions in that state, among the latest of which is *Grothe's App. supra.*

The court, in Massachusetts, has frequently held that the founder of a trust may give an equitable life tenant a qualified estate in income which he cannot alienate and his creditors cannot reach. In *Broadway Nat. Bank* v. *Adams*, 133 Mass. 170, 173, the court said: "By the creation of a trust like this, the property passes to the trustee with all its incidents and attributes unimpaired. He takes the whole legal title to the property, with the power of alienation; the *cestui que trust* takes the whole legal title to the accrued income at the moment it is paid to him." . . . "We are not able to see that it would violate any principles of sound public policy to permit a testator to give to the object of his bounty such a qualified interest in the income of a trust fund, and thus provide against the improvidence or misfortune of the beneficiary." See also *Baker* v. *Brown*, 146 Mass. 369; *Sears* v. *Choate*, 146 Mass. 395, 398; *Maynard* v. *Cleaves*, 149 Mass. 307, 308; *Slatterly* v. *Wason*, 151 Mass. 266. To the same purport see also *Smith* v. *Towers*, 69 Md. 77; *Barnes* v. *Dow*, 59 Vt. 530, 543.

Our opinion, therefore, is that this bill must be dismissed. No costs for either party.

*Bill dismissed.*

PETERS, C. J., WALTON, LIBBEY, HASKELL and WHITE-HOUSE, JJ., concurred.