In re Robert J. SPENLINHAUER,
Debtor.

Bankruptcy No. 90–20750.

United States Bankruptcy Court,
D. Maine.

May 17, 1995.

E. Stephen Murray, Murray, Plumb &
Murray, Anthony E. Perkins, Bernstein,

**362**

Shur, Sawyer & Nelson, Portland, ME, for debtor.

U. Charles Remmel II, Leland W. Chisholm, Kelly, Remmel & Zimmerman, Portland, ME, for Spencer Press, Inc.

Robert Checkoway, Asst. U.S. trustee, Portland, ME.

## MEMORANDUM OF DECISION

JAMES B. HAINES, Jr., Bankruptcy Judge.

Submitted for decision on a stipulated record is the question whether the debtor's one-third beneficial interest in the JRS Realty Trust of Maine ("the Trust") is excluded from his bankruptcy estate under § 541(c)(2) of the Code. For the reasons set forth below, I conclude that the interest is within the estate because the Trust's transfer restrictions are not enforceable under applicable nonbankruptcy law.[1]

### Procedural Posture

Robert J. Spenlinhauer ("Robert" or "debtor") voluntarily filed for relief under Chapter 11 of the Bankruptcy Code on September 28, 1990. After a number of unsuccessful attempts at reorganization, his case was converted to Chapter 7 on October 21, 1994. The Chapter 7 trustee and Spencer Press, Inc., ("Spencer Press"), a contingent creditor, have objected to Robert's assertion that his interest in the Trust is excluded from the estate.

### Facts

On March 1, 1979, John E. Spenlinhauer III ("John"), Stephen P. Spenlinhauer ("Stephen") and Robert formed the Trust. Its trustees are John, Stephen and Robert. Likewise, its beneficiaries are John, Stephen and Robert. During 1979 the Trust purchased undeveloped land in Wells, Maine.

From 1979 through 1988 the property was developed into the Wells Industrial Park ("WIP") and all lots within the park, save one, were conveyed out to third parties.

The Trust leases the remaining WIP lot under a lease arranged pursuant to industrial revenue bond financing. Title to the lot rests in the Wells Industrial Development Corporation ("WIDC"). At the end of its lease term, which coincides with the bond repayment term, the Trust may purchase the lot for $1.00. The Trust's rent obligations equal the amortizing revenue bond obligations. The Trust subleases the property, at the same rent, to Spencer Press of Maine, Inc.[2] Its sublease payments pass through the Trust to WIDC. The sublease contains no purchase option right.

The Trust declaration vests discretion in John, Stephen and Robert, as trustees, to hold or sell its property, to distribute income and proceeds of property sales, and to alter, amend or terminate the Trust. The trustees may act by majority vote. Each brother holds a one-third beneficial interest in the Trust corpus and income. The Trust declaration includes a thoroughgoing restriction on each beneficiary's ability to alienate his interest. It provides that:

> [t]he beneficial interest of any and all persons hereunder shall not be attached, taken upon execution or alienated in any way or manner whatsoever, voluntarily or involuntarily, and our said trustees may make payments of income and of principal as authorized hereunder, directly to third persons for the benefit of any beneficiary hereunder, if our said trustees deem it advisable to do so.

### Discussion

Section 541(a) defines the bankruptcy estate in broad terms. Subject to a few, specifically enumerated exceptions, the estate com-

---

1. This memorandum sets forth findings and conclusions in accordance with Fed.R.Bankr.P. 7052 and 9014. Unless otherwise indicated, all references to statutory sections are to the Bankruptcy Reform Act of 1978 ("Code" or "Bankruptcy Code"), as amended, 11 U.S.C. § 101, *et seq.*

2. Spencer Press of Maine, Inc., is a wholly owned subsidiary of Spencer Press. When the Trust purchased the Wells property in 1979, John, Stephen and Robert, together with their mother, Georgia Spenlinhauer, and the Spenlinhauer Family Trust owned Spencer Press. The brothers operated the corporation(s) together until 1988, when Robert sold his Spencer Press shares and exited the business.

prehends "all legal or equitable interests of the debtor in property as of the commencement of the case...." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204–05 & n. 9, 103 S.Ct. 2309, 2313 & n. 9, 76 L.Ed.2d 515 (1983) (looking to statutory language and legislative history and noting that "Congress intended a broad range of property to be included in the estate"); *Tringali v. Hathaway Machinery Co., Inc.*, 796 F.2d 553, 560 (1st Cir.1986); 4 King, *Collier on Bankruptcy* ¶ 541.01 (15th ed. 1995) [hereinafter "*Collier*"].

 Section 541(c)(2) provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." In other words, beneficial interests in a trust that are subject to enforceable restrictions on transfer under nonbankruptcy (*i.e.* state or federal) law do not become part of the debtor's bankruptcy estate. *See Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). Section 541(c)(2) and its historical antecedents have operated to save unto the debtor his or her interest in a valid "spendthrift trust." *See generally* 4 *Collier* ¶ 541.22; 3 *Norton Bankruptcy Law and Practice 2d* § 51:16 (1994).

The bankruptcy trustee and Spencer Press assert that § 541(c)(2) does not exclude Robert's beneficial Trust interest from the estate for two reasons. First, they claim that the Trust itself cannot stand because it broadly empowers its trustees (who are also the beneficiaries) to distribute income, to sell assets and distribute proceeds and to terminate the Trust. Second, they argue that Robert's interest in the Trust is not protected from involuntary transfer at the behest of his creditors because, being self-settled, its spendthrift transfer restrictions are unenforceable. The latter proposition is clearly

correct, and because it disposes of the present controversy entirely, I will not address the former.[3]

 I begin with the proposition that in Maine, as in most other states, spendthrift trusts are valid. *See Roberts v. Stevens*, 84 Me. 325, 24 A. 873 (1892). *See also In re Kwaak*, 42 B.R. 599, 602 (Bankr.D.Me.1984); *Lessard v. Metropolitan Life Insurance Co.*, 568 A.2d 491, 497 (Me.1989). *See generally* Read, Comment, *Spendthrift Trusts in Washington—The Statutory Restraint upon Involuntary Alienation*, 58 Wash.L.Rev. 831 (1983) ("A large majority of American jurisdictions recognize spendthrift trusts by statute, court decision or both.").

Beyond that point, Maine law regarding the spendthrift trust is virtually nonexistent. However, Maine's Supreme Judicial Court has regularly cited and followed the Restatement (Second) of Trusts (1959) [hereinafter "Restatement"] in fashioning its state law of trusts. *See, e.g., Bombardier Capital, Inc. v. Key Bank of Maine*, 639 A.2d 1065, 1067 (Me.1994) (§ 202 cmt. j: lowest intermediate balance rule); *Attorney General v. First United Baptist Church of Lee*, 601 A.2d 96, 98 (Me.1992) (§ 348: defining public trust); *Estate of Stowell*, 595 A.2d 1022, 1025 (Me. 1991) (§ 170(1) cmts. b, h: fiduciary duty of personal representative); *Bay of Naples Condominium Association v. Lewis*, 582 A.2d 1210, 1212 (Me.1990) (§ 264: trustee's personal liability for tortious conduct); *Newick v. Mason*, 581 A.2d 1269, 1272 n. 5 (Me. 1990) (§ 398: whether a valid charitable trust has been created); *Lessard v. Metropolitan Life Insurance Co.*, 568 A.2d at 497 (§ 152(2): defining spendthrift trust); *Philoon v. Varney*, 514 A.2d 1203, 1206 (Me. 1986) (§§ 169, 186: trustee's duty to administer trust).

The principles that determine the unenforceability of transfer restrictions on a self-

---

**3.** Neither will I address the debtor's challenge to Spencer Press's standing in this matter. The Chapter 7 trustee, who clearly does have standing, has joined in Spencer Press's request that the debtor's interest in the Trust be determined to be within the bankruptcy estate. *See* § 704(1) (trustee's duty to collect property of the estate). As to the trustee, I note that this contested matter addresses the estate's extent, as opposed to the debtor's exemption claims, and is therefore not subject to Fed.R.Bankr.P. 4003(b)'s objection limitation provisions. *Cf. Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992) (objections to exemptions must be filed within thirty days of § 341 meeting); *Mercer v. Monzack*, 53 F.3d 1 (1st Cir.1995) (explaining Rule 4003(b)'s operation).

settled spendthrift trust are axiomatic. *See* Emanuel, *Spendthrift Trusts: It's Time to Codify the Compromise,* 72 Neb.L.Rev. 179, 190 (1993) (observing that invalidity of self-settled spendthrift trusts is "virtually universal") (citing Griswold, *Spendthrift Trusts Created in Whole or in Part for the Benefit of the Settlor,* 44 Harv.L.Rev. 203, 208 (1930)). They are clearly reflected not only in the Restatement, but in well-developed case law from other jurisdictions, leaving no doubt that they apply here.

■ In *In re Kwaak,* Judge Johnson described spendthrift trusts, and, in *dictum,* articulated the axiom:

> Generally speaking, a spendthrift trust is one which, by the terms of the trust or by statute, restrains the voluntary or involuntary transfer of the beneficiaries' interest. Under the common law of trusts, a spendthrift trust which names the settlor as beneficiary is invalid, and as a consequence, existing or future creditors *can* reach the settlor's interest. G. Bogert, *Law of Trusts and Trustees,* Rev.2d ed. § 223, pp. 438, 439 (1979). These provisions ensure that though an individual can set up a trust to provide for the welfare of another, he cannot control his own assets to defraud his creditors.

42 B.R. at 602 (emphasis in original).

*Kwaak* accurately summarizes the law. *See* Restatement § 156(2) (where a person creates for his own benefit a trust with a provision restraining the voluntary or involuntary transfer of his interest, his transferee or creditors can reach his interest); IIA Scott & Fratcher, *The Law of Trusts* § 156.3 (4th ed. 1987 & Supp.1994) [hereinafter "*Scott on Trusts* "]. *See, e.g., In re Moody,* 837 F.2d 719, 723 (5th Cir.1988) (describing exception to enforceability of spendthrift trusts); *In re Robbins,* 826 F.2d 293, 295 (4th Cir.1987) ("general rule"); *Harrison v. City National Bank of Clinton,* 210 F.Supp. 362, 369 (S.D.Iowa 1962) (proposition "well settled"); *In re O'Brien,* 50 B.R. 67, 74 (Bankr.

E.D.Va.1985) (same); *In re Hall,* 22 B.R. 942, 944 (Bankr.M.D.Fla.1982) ("uniformly held"); *Spratt v. Security Bank of Buffalo,* 654 P.2d 130, 136 (Wyo.1982); *Electrical Workers, Local No. 1 Credit Union v. IBEW–NECA Holiday Trust Fund,* 583 S.W.2d 154, 162 (Mo.1979) ("hornbook law"); *Arizona Bank v. Morris,* 6 Ariz.App. 566, 568, 435 P.2d 73, 75 (1967), *modified,* 7 Ariz. App. 107, 436 P.2d 499 (1968). "One may wish to have one's cake and eat it, too, but the law need not bring the wish to fruition." *In re Robbins,* 826 F.2d at 295.

■ It is no answer that the debtor is one of several settlors and, at the same time, one of several beneficiaries. As to the self-settling spendthrift trust beneficiary, transfer restrictions will not remove his beneficial interest (sole or partial) from his creditors' reach. *See* Restatement § 156 cmt. f (addressing a situation in which the self-settling beneficiary is "one of the beneficiaries"); IIA *Scott on Trusts* § 156 at 167–68 ("To the extent which the settlor himself takes an interest under the trust … that interest is subject to the claims of his creditors even though the creation of the trust was not a fraudulent conveyance."). *See also, e.g., In re Frangos,* 132 B.R. 723, 724 (Bankr. N.D.Ohio 1991) (interest of one of two beneficiaries), *aff'd on reh'g,* 135 B.R. 272 (Bankr. N.D.Ohio 1992); *Electrical Workers,* 583 S.W.2d at 162 (applying the rule where beneficiaries/settlors were numerous). Thus, the Trust's anti-alienation terms cannot stand. Robert's beneficial interest in the trust is within his bankruptcy estate.[4]

■ Robert argues further that, even assuming his beneficial interest is within the estate, it is so only to the extent of Trust income distributions he is presently entitled to receive. He asserts that there will be no such income in the foreseeable future because John and Stephen will not raise Spencer Press's rent under the sublease (because they would not be inclined to raise expenses for their own company so long as its rent

---

4. The full extent of Robert's one-third interest in the self-settled trust is within the estate. He has proffered no evidence to show that any portion of the trust principal was contributed by parties other than the three, self-settling brother beneficiaries. *Cf. In re Switzer,* 146 B.R. 1, 3–4 (Bankr. C.D.Cal.1992) (debtor has burden to show that valid transfer restrictions remove interest in trust from the estate under § 541(c)(2)).

covers the revenue bond obligations). As to his underlying interest in the corpus, he points out that his brothers will not terminate the Trust and make a distribution to beneficiaries until at least the year 2001, likely later.[5]

These arguments are unavailing. Whatever the value of Robert's one-third interest in income and principal, it is within the estate. The bankruptcy trustee may administer it. The value of Robert's interest affects *what* the trustee, on reflection, might do with the asset, not *whether* it is within the trustee's purview to do something with it.

Robert's final argument is that the court should view the Trust and its anti-alienation provisions as something akin to pension trusts and should be deemed "exempt." Without bothering to count further, there are at least two overwhelming faults with the argument. First, as a matter of trust law, the Trust's transfer restrictions are not enforceable as to Robert's interest, so they provide no basis from which this court can view the Trust as similar or dissimilar from assets subject to valid anti-alienation provisions. Second, he has specified no statutory exemption provision that supports his claims. *See* § 522(*l*) (debtor shall file list of exemptions); Fed.R.Bankr.P. 4003(a) (debtor to list exemption claims); Me.Bankr.R. 4003 (claim of exemption shall be specific as to property and statutory basis).

### *Conclusion*

For the reasons set forth above, I conclude that the debtor's one-third beneficial interest in the JRS Realty trust is included within his bankruptcy estate. A separate order consistent with this decision shall issue forthwith.

---

**5.** Robert has not argued that, under pertinent principles, the Trust's structure places the corpus beyond his creditors' reach. *Cf.* Restatement § 153 and cmt. d (circumstances when, although restrictions on transfer of income may fail, restrictions relating to principal may stand). Rather, he argues that the prospect of a distribution of principal is so remote as to be without value.