## JONES v. HARRISON et al. *

### SAME v. READY et al.

(Circuit Court of Appeals, Eighth Circuit. July 31, 1925.)

Nos. 273, 7029.

**1. Trusts ⊚⇒12—Courts must respect limitations as to payment of trust fund to beneficiary, regardless of beneficiary's habits.**

Whenever intent of testator to impose restriction in payment of the trust fund to beneficiary exists, court must respect the limitations, regardless of beneficiary's habits.

*Rehearing denied November 3, 1925.

**2. Courts ⊚⇒367—Whether American rule as to trusts shall be applied to equitable interests thereunder is a local rule of property, binding on the federal courts.**

Whether American rule, rendering intent of testator in creating a trust superior to claims of creditors or power of the beneficiary, shall be applied to equitable interests under a trust, is a local rule of property binding on federal courts; but the interpretation of particular wills, to determine whether they create a case within the rule, turns on questions of fact, and decisions thereon can only bind by force of analogy.

**3. Wills ⊚⇒674—No particular form of words necessary to create restriction on power of beneficiary to enjoy trust property.**

No particular form of words is necessary to create restriction placing interest of beneficiary of trust beyond reach of his creditors; nor is it necessary that the restriction be expressed directly in the language of the will.

**4. Wills ⊚⇒674—Courts will give effect to plain intent to restrict beneficiary's enjoyment of trust property.**

Courts look at all the provisions of the will and circumstances under which it was made, including condition of beneficiary, and, if intent to restrict beneficiary's interest in trust property, so that creditors cannot reach it, is reasonably plain from a consideration of all such features, courts will give effect to that intent.

**5. Evidence ⊚⇒5(2)—Common knowledge that sale or incumbrance of beneficiary's interest in trust is made on most onerous terms.**

It is a matter of common knowledge that sale or incumbrance of the interest of beneficiary in a trust is always made on the most onerous terms, and that credit extended to such beneficiary on faith of his interest always takes heavy toll on account of the hazard.

**6. Bankruptcy ⊚⇒143(10)—Estate put in trust and expressly restricted as to creditors evidences testator's intent to restrict beneficiary's power to incumber.**

An estate put in trust and expressly restricted as to creditors does not pass to trustee in bankruptcy, though assignable by beneficiary, since the restriction sufficiently evidences an intent by testator to impose a restriction also upon the beneficiary's power to alienate or incumber.

**7. Trusts ⊚⇒152—Restriction on beneficiary's power of alienation will protect trust as against creditors.**

A restriction as to the beneficiary's power to alienate will protect a trust as against creditors.

**8. Wills ⊚⇒674—Will held to manifest testator's intention to place trust property beyond power of his son to alienate or his creditors to seize.**

Will bequeathing directly to testator's son a large part of his estate and creating a trust out of certain other personal property, directing the income from such trust to be paid by trustee to beneficiary "direct" between beneficiary's twenty-fifth and thirty-fifth year, *held* to manifest an intention that testator intended

by the trust to place the trust property beyond power of his son to alienate or his creditors to seize.

**9. Bankruptcy ⬨⇒440—Petition to revise held improper to review decree dismissing petition filed by trustee in bankruptcy to sequester bankrupt's interest in trust estate for benefit of creditors.**

In petition in bankruptcy proceeding by trustee to sequester for benefit of creditors, interest of bankrupt in a trust estate created by his father's will, decree dismissing the petition on the merits cannot be properly reviewed by a petition to revise.

Appeal from, and Petition to Revise Order of, the District Court of the United States for the Western District of Missouri; Albert L. Reeves, Judge.

Petition by Joseph M. Jones, trustee in bankruptcy, against John T. Ready, bankrupt, and others, to sequester for benefit of creditors the interest of bankrupt in trust estate created by his father's will, resisted by Edwin A. Harrison and others, trustees. To review a decree dismissing the petition on the merits, petitioner appeals, and petitions to revise. Decree affirmed.

Justin D. Bowersock, of Kansas City, Mo. (Robert B. Fizzell and John F. Rhodes, both of Kansas City, Mo., on the brief), for appellant and petitioner.

H. B. Shain, of Sedalia, Mo. (Holmes Hall and W. D. O'Bannon, both of Sedalia, Mo., on the brief), for appellees and respondents.

Before KENYON and BOOTH, Circuit Judges, and AMIDON, District Judge.

AMIDON, District Judge. This is a petition in a bankruptcy proceeding filed by the appellant as trustee to sequester for the benefit of creditors the interest of the bankrupt in a trust estate created by his father's will. The referee sustained the petition and granted the relief prayed for. The trial court reversed that decision and entered a decree dismissing the petition on the merits. The present appeal seeks a review of that decree.

These are the facts: In September, 1911, John T. Ready, the bankrupt's father, made his will. After providing for numerous personal bequests he bequeathed to the bankrupt, his only son, in fee simple, nearly all his real estate. This included two dwelling houses in Sedalia, Mo., and other property in Greenfield, in that state, and a considerable body of land. This property is given to the bankrupt absolutely. By the sixteenth and seventeenth paragraphs of the will the testator creates a trust to hold certain notes and mortgages, and 50 shares of stock in the

Dade County Bank. The declaration of trust empowers the trustees to collect the interest and principal of the notes and mortgages, and the dividends on the stock. It authorizes them to reinvest funds not needed to carry out the trust in real estate securities in Dade county, Mo., and gives specific directions on that subject. This part of the will further provides that the income from the trust estate shall be first used to pay the expenses of the trust and taxes thereon, and on certain real estate bequeathed to the son, with a few other minor items.

Upon the son's reaching the age of 25 years the will directs the trustees as follows: "To pay over to him out of the trust funds other than the Dade County Bank stock, the sum of ten thousand dollars either in cash or securities as he may prefer to receive and from that time or for the next ten years until my said son shall have arrived at the age of thirty-five years I direct that yearly all the balance of the net income after deducting the payments of the taxes and the expenses of the trust shall be turned over by my said trustee or trustees as the case may be to my said son John Thomas Ready *direct* and I further direct that when my said son shall arrive at the age of thirty-five years that my said trustees shall pay over to my said son out of the trust funds other than the bank stock the further sum of ten thousand dollars either in cash or good securities as he may prefer, and I further direct that the trust shall continue as before as to the remainder of the trust funds on the same terms and conditions for a further term of ten years, my said trustees paying over to my said son once a year the balance of the net income derived from interest and dividends, after paying the little annuities taxes and expenses of the trust, and I further will and direct that when my said son, John Thomas Ready, shall have arrived at the age of forty-five years that my said trustees or the survivor of said trustees if one should be dead at the time shall make a full and complete settlement with the court or my said son, John Thomas Ready, and turn over to him all the trust funds of whatever kind then in their possession, and on the doing of which the said trust shall cease and terminate."

Provision is then made that in case of the son's death that part of the trust estate then in existence shall pass to certain nephews and nieces.

The father died in April, 1912, less than a year after the will was executed. The will has since been duly admitted to probate.

The $10,000 installment due upon the son's attaining the age of 25 years was paid, and the net income has also been paid annually to him down to the time of the filing of the petition in bankruptcy. It is stipulated that the value of the trust estate is now about $25,000.

The petition in bankruptcy was filed May 10, 1922. The bankrupt became 35 years of age on December 7, 1924, and by the terms of the trust was on that date entitled to receive the second installment of $10,000, but it has been withheld to await the result of this litigation.

The trustee in bankruptcy insists that by the terms of the trust the bankrupt at the time he filed his petition in bankruptcy held an unrestricted equitable estate or interest in the payments thereafter to accrue to him under the terms of his father's will. The bankrupt contends that, when all the provisions of the will are read in the light of the circumstances under which it was made, it is manifest that the testator intended to impose upon the beneficiary's interest a restriction, namely, that the beneficiary should not have power to incumber or alienate the same, or to anticipate the payments, and that his interest should not be subject to the claims of his creditors. Such is the issue.

[1] A trust subject to the restrictions above specified has for historic reasons obtained the name of a "spendthrift trust." That term, however, is purely descriptive. Whenever the intent of the testator to impose the restrictions exists, it is the duty of courts to respect the limitations, regardless of the habits of the beneficiary. In short, to create a spendthrift trust, it is no longer necessary that the beneficiary be a spendthrift.

The power of a testator to provide by a trust for the future welfare of a beneficiary, and yet place the interest granted beyond his power to alienate or incumber, or his creditors to seize, has been a matter of slow growth. It first appeared in settlements for married women, for the purpose of placing the wife's separate estate beyond her own power and beyond that of her husband. After much hesitation in the English courts, and by the aid of some statutory provisions, the rights of a married woman in her separate estate were finally fully safeguarded. Those courts, however, have steadfastly refused to grant the same immunity to the interest of the beneficiary in a trust. The question was finally put to rest in 1811, in the case of Brandon v. Robinson, 18 Vezey, 429. The only way under the English de-

cisions that a trust can be saved is to terminate it, in case restrictions are violated. It became the settled doctrine of those courts, as stated by Gray in his Restraints on Alienation, that "whatever a man can demand from his trustees, that his creditors can demand from him." Page 151.

At a comparatively recent date American courts adopted a more liberal rule, enabling the testator to protect his gift until it is actually paid over to the beneficiary. The leading authority, Nichols v. Eaton, 91 U. S. 716, 23 L. Ed. 254, was decided in 1875. This was followed by the Supreme Judicial Court of Massachusetts in Broadway Nat. Bank v. Adams, 133 Mass. 170, 43 Am. Rep. 504, in 1882, and by the Supreme Court of Missouri in 1888, in Lampert v. Haydel, 96 Mo. 439, 9 S. W. 780, 2 L. R. A. 113, 9 Am. St. Rep. 358. In this brief period since 1875 the rule has become firmly established in the great majority of American courts, and has been applied with increasing liberality of interpretation. This rule and its grounds are stated by the Supreme Court in Nichols v. Eaton, as follows:

"The doctrine, that the owner of property, in the free exercise of his will in disposing of it, cannot so dispose of it, but that the object of his bounty, who parts with nothing in return, must hold it subject to the debts due his creditors, though that may soon deprive him of all the benefit sought to be conferred by the testator's affection or generosity, is one which we are not prepared to announce as the doctrine of this court. * * *

"Nor do we see any reason, in the recognized nature and tenure of property and its transfer by will, why a testator who *gives*, who gives without any pecuniary return, who gets nothing of property value from the donee, may not attach to that gift the incident of continued use, of uninterrupted benefit of the gift, during the life of the donee. Why a parent, or one who loves another, and wishes to use his own property in securing the object of his affection, as far as property can do it, from the ills of life, the vicissitudes of fortune, and even his own improvidence, or incapacity for self-protection, should not be permitted to do so, is not readily perceived."

See, also, Shelton v. King, 229 U. S. 90, 96, et seq., 33 S. Ct. 686, 57 L. Ed. 1086.

As against the trustee under the trust, the rights of the beneficiary are the same whether the trust imposes restrictions or fails to do so. The restriction affects only the power of the beneficiary and his creditors. Under the English rule the right of alienation

and liability for debts is deduced as an inevitable incident of ownership legal or equitable, and regardless of the testator's intent. The American rule refuses to make that deduction and renders the intent of the testator superior to the claims of creditors or the power of the beneficiary.

[2] Whether the American rule shall be applied to equitable interests under a trust is a local rule of property binding on federal courts. Allen, Trustee, v. Tate (C. C. A.) 6 F.(2d) 139, filed May 12, 1925. But the interpretation of particular wills, to determine whether they create a case within the rule, turns on questions of fact, and decisions on such questions can only bind by force of analogy. Such is the case, at least, until the decisions are so clear as to convert the question of fact into a rule of law. The decisions of the Supreme Court of Missouri are not entirely harmonious. Kingman v. Winchell, 20 S. W. 296 (not reported in the official reports of the state), adopts a strict construction confining the court narrowly to the language of the will in discovering the testator's intent. The recent case of Higbee v. Brockenbrough (Mo. Sup.) 191 S. W. 994, adopts a much more liberal view, and safeguarded a trust which contained no express restrictions. Because of this state of the Missouri cases, we have felt called upon to consider the decisions in other jurisdictions.

[3, 4] It is now well established that no particular form of words is necessary to create the restriction. Nor is it necessary that the restriction be expressed directly in the language of the will. On the other hand, courts look at all of the provisions of the will, and the circumstances under which it was made, including the condition of the beneficiary, and, if the intent to restrict is reasonably plain from a consideration of all these features, courts will give effect to that intent. Berry v. Dunham, 202 Mass. 133, 88 N. E. 904; Bennett v. Bennett, 217 Ill. 434, 75 N. E. 339, 4 L. R. A. (N. S.) 470; Wallace v. Foxwell, 250 Ill. 616, 95 N. E. 985, 50 L. R. A. (N. S.) 632; Stambaugh's Estate, 135 Pa. 585, 19 A. 1058; Everitt v. Haskins, 102 Kan. 546, 171 P. 632; Barnes v. Dow, 59 Vt. 530, 10 A. 258; Roberts v. Stevens, 84 Me. 325, 24 A. 873, 17 L. R. A. 266; Patten v. Herring, 9 Tex. Civ. App. 640, 29 S. W. 388; Seymour v. McAvoy, 121 Cal. 438, 53 P. 946, 41 L. R. A. 544; Mattison v. Mattison, 53 Or. 254, 100 P. 4, 133 Am. St. Rep. 829, 18 Ann. Cas. 218.

The Supreme Court of Missouri has stated the rule as follows:

Wills "are to be construed as a whole; liberally construed; construed with reference to the intention of the testator; and unless that intention if carried out will violate some positive rule of law, or subvert some rule of public policy, such intention must be allowed to control, and be effectuated by the courts. And in construing wills which create trusts, the same liberality of construction as to such trusts prevails." Partridge v. Cavender, 96 Mo. 456, 9 S. W. 786; Higbee v. Brockenbrough (Mo. Sup.) 191 S. W. 994, 995.

In the following cases the courts have held that the fact of placing property in the hands of a trustee evidences an intent on the part of the testator to put it beyond the power of the beneficiary to alienate, or his creditors to seize. Everitt v. Haskins, 102 Kan. 546, 171 P. 632; Bennett v. Bennett, 217 Ill. 434, 75 N. E. 339, 4 L. R. A. (N. S.) 470; Leary v. Kerber, 255 Ill. 433, 99 N. E. 662; Stambaugh's Estate, 135 Pa. 585, 19 A. 1058; Higbee v. Brockenbrough (Mo. Sup.) 191 S. W. 994; Wallace v. Foxwell, 250 Ill. 616, 95 N. E. 985, 50 L. R. A. (N. S.) 632, 642; Leigh v. Harrison, 69 Miss. 923, 11 So. 604, 18 L. R. A. 49.

The reason why this consideration has not been more frequently emphasized by our courts is probably historic. The American doctrine was developed as a limitation upon the previous law. Under the old rule the courts had resolutely held that the interest of the beneficiary under such a trust was a vested interest, and as such was necessarily subject to disposition by its owner, and to seizure by his creditors. The trust itself was no protection against these consequences. American courts, in order to establish the more liberal rule, had to go beyond the fact of the trust. Their attention was wholly withdrawn from the mere creation of the trust to some additional fact upon which they could seize as a basis for upholding the restriction. As in the case of the separate estate of married women, the restriction was at first sustained upon express language in the trust declaring that the interests of the beneficiary should not be alienated or incumbered by him, or seized by his creditors. In the early cases this was the sole basis of the American rule. Later the rule was extended, so that no particular words were necessary. The intent of the testator, however manifested, became the sole ground of judicial decision. If the courts at the beginning had considered themselves at liberty to be guided wholly by the intent of the creator of the trust, it seems reasonable to believe that

much greater weight would have been attached to the mere fact of the creation of the trust, as evidencing an intent to impose the restriction.

[5] It is manifest that, if the interest of the beneficiary in a trust is as fully subject to his disposal, and to seizure by his creditors, as it would have been if willed directly to him, then such a trust, instead of being a safeguard for the protection of the beneficiary, becomes a means for the improvident dissipation of the subject-matter of the trust; for it is a matter of common knowledge that the sale or incumbrance of such an interest is always made upon the most onerous terms, and that credit extended to such a beneficiary on the faith of his interest always takes heavy toll on account of the hazard. The present case goes even further, for counsel for the trustee in bankruptcy stated in argument that it was his intent to sell the interests of the bankrupt under the trust. It is manifest that, in so far as those interests are future, the contingencies that surround them would cause them to be sold at a ruinous sacrifice. The result would be small benefit to the creditors, and disastrous loss to the beneficiary. Such considerations as these give an impressive force to the placing of the property in trust, as evidencing the intent of the testator to put it beyond the reach of such sacrifice and waste.

[6] Equitable trust interests, restricted as to creditors, do not pass to trustees in bankruptcy, though assignable by the beneficiary. This results from the fact that an estate put in trust, and expressly restricted as to creditors, sufficiently evidences an intent by the testator to impose a restriction also upon the beneficiary's power to alienate or encumber. Boston Safe Deposit Co. v. Luke, 220 Mass. 484, 108 N. E. 64, L. R. A. 1917A, 988; Id., 240 U. S. 427, 36 S. Ct. 391, 60 L. Ed. 723, Ann. Cas. 1918D, 90; Hull v. Palmer, 213 N. Y. 315, 107 N. E. 653; Id., 245 U. S. 312, 38 S. Ct. 103, 62 L. Ed. 312.

[7] The converse of this is also true. A restriction as to the beneficiary's power to alienate will protect a trust as against creditors. Roberts v. Stevens, 84 Me. 325, 24 A. 873, 17 L. R. A. 266; Partridge v. Cavender, 96 Mo. 452, 9 S. W. 785. These cases also show unmistakably that courts no longer consider ancient phrases necessary to safeguard trust estates.

[8] Turning, now, to the will which is here under consideration, there is but a single item in its language which expresses an intent of the testator to impose restrictions upon the beneficiary's interest. That is found in the use of the word "direct," as to the income accruing between the beneficiary's twenty-fifth and thirty-fifth year. The will requires this income to be paid by the trustees to the beneficiary "direct." This fairly imports that such payments were not to be made to alienees or to creditors. This language, however, is not used with respect to the payment of any other income, or to the payments out of the capital of the trust.

Looking to the circumstances, and to all the provisions of the will, we find further ground in support of the restriction. The testator bequeathed directly to his son a large part of his estate. As to that bequest the property was placed under the son's absolute control, and, of course, was subject to the claims of his creditors. If it was the intent of the testator that the property covered by the trust should be subject to the same liability, what possible object was there in creating the trust? The only result of such an act would be to waste the trust property. The trust would not control the son or his creditors, but would place the property in such a position that any disposition of it by the one or the other would be attended with serious loss. These considerations, in our judgment, furnish a persuasive reason for holding that the testator intended by the trust to place the property beyond the power of his son to alienate or his creditors to seize.

When the will was made the son was only 21 years of age. It was impossible at that time for the testator to forecast the son's ability to safeguard property interests. He turned over to the unrestricted ownership of the youth a large part of his estate. What was his object in creating the trust? We can find no answer, but a purpose (1) to establish a fund whose income would make sure to his child the common necessaries of life; and (2) to withhold the capital of the trust until his son should reach such years of discretion that he would be likely to safeguard his own interest. The fact that the payments out of the principal were to be made gradually at widely separated periods, so that the son might profit by experience and by the ripening judgment which age usually brings, gives support to the inference that it was the father's intent to place the property beyond the son's power until it was actually paid over to him by the trustees. Any other interpretation robs the creation of the trust of any sensible or rational purpose.

To the mind of laymen, property whose legal title is placed in the hands of trustees is wholly beyond the reach of the beneficiary. They know nothing of so-called equitable estates. To them the trust has no object but to put the property beyond the power of the beneficiary and his creditors.

The will was carelessly drawn. A skillful draftsman would have placed the question here involved beyond the reach of cavil. But, as Chief Justice Paxson said in Stambaugh's Estate, 135 Pa. 585, 19 A. 1058, the intent of the testator "ought not to be defeated because his conveyancer blundered."

The decision of the trial court is in harmony with the fundamentals of the American rule. These are that the testator, as owner of his property, has a right to bestow it with such restrictions as he sees fit to impose, and that his intent cannot be subordinated to the power of the beneficiary or of his creditors.

[9] It is elementary law, based on repeated decisions of this court and other courts of appeal, that the decree in this case could not properly be reviewed by a petition to revise. That petition will therefore be dismissed.

The decree is affirmed.