## Keen's Estate.

Argued January 14, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*Maurice Stern,* with him *James A. Walker,* for appellants.—The Supreme Court, by its decree of reversal, intended a reaudit of the estate and a readjudication on

the theory which the Supreme Court laid down as the law of the case: Burrows v. Carson, 23 Pa. Dist. R. 308; Leafgreen v. La Bar, 293 Pa. 263.

A trustee is not entitled to commissions where his account shows an unfair exhibit and where through his supine negligence the beneficiaries are involved in protracted litigation and retain moneys which the accountant alleged had been distributed: Keen's Est., 293 Pa. 267; Reich's Est., 230 Pa. 55; Norris's App., 71 Pa. 106; Clauser's Est., 84 Pa. 51; Hanna v. Clark, 204 Pa. 145.

The necessity of the arduous labors of counsel for the accountant were caused solely by the negligence of the accountant in the management of the estate—their misstatements to counsel and to the court: Lowe's Est., 6 W. N. C. 333; Sinkler's Est., 10 Pa. Dist. R. 399; Carr's Est., 24 Pa. Superior Ct. 369.

The accountants may not charge from distribution any income or ask for a credit of overdistribution of income where the trust is a spendthrift trust.

*Thomas Ræburn White,* of *White, Parry, Schnader & Maris,* with him *John Cadwalader,* for appellee.—The court below correctly interpreted the opinion of this court as requiring a different method of distribution but not the reopening of questions previously adjudicated and not passed upon by this court.

There are no other questions which can be considered by the court on this appeal.

OPINION BY MR. JUSTICE SIMPSON, March 14, 1932:

On the prior appeals in this estate (293 Pa. 267), James A. Walker, executor of the will of Beatrice Keen Wescoat, deceased, was one of the appellants, the Pennsylvania Company for Insurances on Lives and Granting Annuities, administrator of the estate of Mabel Keen, deceased, was the other appellant, and John Cadwalader, Jr., and Thomas Francis Cadwalader, executors of the

will of John Cadwalader, deceased, were the appellees in both. There is exactly the same alignment of parties in the two appeals now being considered.

Upon the adjudication of the account of John Cadwalader, as executor of the will of this testatrix, the net balance shown thereby was awarded to him in trust for the uses and purposes declared in her will, that is to say, to be held by him upon an active trust, the net income to be expended in paying $2,000 annually to testatrix's husband during his life, and the balance thereof for the maintenance, education and support of her two children, Beatrice and Mabel, during their minority, and "upon their arriving at full age or marriage whichever may happen first" to pay one-half of said balance to Beatrice for life, upon a spendthrift trust, and the other half, during the life of Mabel, to testatrix's "particular friend Evelyn Sooy" to be expended by her for the benefit of Mabel. There was no gift over on the death of Beatrice and Mabel, and hence the remainder estate was vested in them and their father absolutely.

Testatrix was also the owner of certain improved property in New Jersey, for which Mr. Cadwalader had been her agent. Her will, which was not witnessed, was invalid in that State, and hence her husband and her two daughters became owners of these properties in fee. With their tacit or actual consent, Mr. Cadwalader continued to collect the rents as theretofore. He was likewise a trustee under the will of Julia A. Pleasanton, in which also Beatrice and Mabel had life estates, their exact status being more fully set forth in an opinion in that estate, filed contemporaneously herewith [the preceding case].

Mr. Cadwalader was careful to keep the investments of the principal funds of this estate properly segregated. He did not do so, however, with the income. He had but a general account, in which was deposited the income of the two trusts, the collections from the New Jersey property, and money derived from other sources; and when

he paid any of it to or for the two life tenants herein, he drew a check for the amount, without designating on the check or check stub to which estate it related, and without making any notation elsewhere to show against which estate's account it was drawn. The result was that after his death, and the deaths of Beatrice and Mabel, his executors were not able to allocate any payment to any particular estate. To meet this difficulty, they set forth, on the credit side of their account in this estate, all the amounts which Mr. Cadwalader had paid to Beatrice and Mabel, though the aggregate thereof exceeded the total debits. This course was pursued under the advice of counsel, their intention being to utilize sufficient of those payments to balance the income account of this estate, and to use the remainder of them as credits in the Julia A. Pleasanton estate. The auditing judge, however, credited the excess to the principal account of this trust; his action in so doing was approved by the court in banc and a decree of distribution made accordingly.

On appeal, we reversed, because the court below had not taken into consideration the fact that, in the present estate, there was a spendthrift trust, the principal of which could not thus be depleted (see Stambaugh's Est., 135 Pa. 585), and hence we made the following order: "We shall not undertake to pass upon the alleged devastavit, or the explanation of counsel for accountants, nor shall we further examine any of the numerous assignments of error; for this record must be returned to the court below with directions that the account shall be taken up again for final adjudication when the account in the Pleasanton Estate comes before that tribunal for audit. In order that another method of distribution consistent with the views here expressed may be pursued, the decree appealed from is reversed; the costs to await a future order."

When the record was returned, counsel for all the parties in interest in each estate, with the approval of

the court below, agreed that the two estates should be referred to an auditor, who would make report to that court. In this estate, the distributees, though agreeing that the evidence taken before the auditing judge, prior to the appeals, should be considered as taken before the auditor, yet contended that every question which they desired to raise should be determined by the auditor de novo, without reference to any prior decision thereon by the auditing judge and the court in banc. This contention the auditor correctly overruled, though giving a mistaken reason for so doing, viz., "If there were other errors in the record......the Supreme Court could and should have passed upon them; for they were preliminary to distribution." In this he wholly overlooked our distinct statement that we would not consider them, our reason for so doing being the obvious one that the error for which we reversed inhered in the final decree of distribution itself, irrespective of any precedent trial errors; and hence, as the court below had power to change any of its prior rulings before the entry of an appropriate final decree, we could not know until an appeal therefrom whether or not those prior rulings would be assigned as error, and, if they were, whether or not they disclosed errors which were harmful to appellants. The auditor's conclusion on the point was right, however, since it would have been highly improper for him to have undertaken to overrule the court which appointed him, on any unreversed matter which it had directly decided, unless with leave of that court, and this was neither asked nor given.

In their history of the case, appellants say that their "entire attack......was [1] against the allowance of credits for the overdraft of principal; and [2] to the allowance of credits out of the estate for counsel fees necessitated by the difficulties in which the fiduciary had involved himself; and [3] against the allowance of commissions to a fiduciary who had mismanaged his stewardship and failed to give an accurate account thereof."

The first of these objections no longer exists; the final decree, from which the present appeals are taken, makes no overdraft on the principal account. In their brief of argument, appellants add three other points, [4] the refusal of the court below to reopen the entire case on the return of the record after our reversal of the previous decree; [5] an averment that the court below should have charged the trustee's estate with the resulting loss where he took title in his own name to a piece of realty, when it should have been taken in the name of the trust estate; and [6] an objection to a credit for overdistribution of income where, as here, the trust is in part a spendthrift trust. The sixth of these objections may be dismissed with the statement that this decree of distribution makes no excess charge against income. In considering the other four, it is important to note the other proceedings following the return of the record to the court below.

Before the auditor, a superseding supplemental account was filed, to bring the matter down to date. To it, appellants filed a large number of exceptions, and the auditor took all the evidence produced, which did not impinge on the prior rulings of the court which appointed him, and all that might have a bearing on the questions raised, which were either new, or in which the situation had changed since the earlier hearing. Some of these matters he decided in favor of appellants and some against them. On exceptions filed, the court below sustained him in all but one particular, and entered a final decree of distribution from which the present appeals are taken. There are forty-one assignments of error. It is impossible to read them and not recognize that they embrace every point raised before the auditor, no matter how certain it is that he was right. Many of them are but repetitions of others and many more complain because the court below sustained the auditor for not treating all the matters before him de novo, and for refusing to reverse him for his refusal to reverse its prior

unreversed rulings. If appellants wished us to review those questions, they should have assigned, on these appeals, the same errors they assigned on the prior appeals, but they did not do this, though our reference back left the door open to them to pursue that course. This disposes of the fourth of the points above.

Most of the other assignments relate to the second and third of those points and complain because the trustee was not deprived of all commissions and counsel fees. These are really the main questions raised, and in considering them we have laboriously read the records and briefs, including the first adjudication of the auditing judge, and cannot find any abuse of discretion in the allowances finally made. As it is, the trustee's estate suffers much for his error in commingling the income from the several trusts, and to punish him further does not seem reasonable, in view of the conceded or correctly found facts that he acted honestly and in good faith, that he made none but safe investments, that the estate suffered no loss, and that he actually made all the payments for which credits are allowed. That he did not make a book entry of the commissions and counsel fees now claimed and allowed, of which some point is made, is, of course, a matter of no moment. The proper time to claim them is in or on the audit of his account.

This leaves open only the fifth of the objections above stated. It appears that the estate had a large mortgage on a valuable property. The mortgage was in arrears and the owner could not or would not pay the amount due. To obviate the expense of foreclosure proceedings, the trustee agreed to take title to the property, and, to avoid a merger, took it in his own name. He collected the rents, credited the estate with the amount received, and charged it with the taxes and cost of repairs. He later sold the property and credited the estate with the purchase price. Appellants contend that the mere fact of taking title in his own name resulted in their having the option of taking the property itself, or of taking the

amount of the mortgage with interest. This is too broad a statement. We adhere closely to the rule that where a trustee takes title for his personal benefit, whether in his own name or in that of some other person, the beneficiaries may elect as appellants now contend; but this rule has no applicability where, as here, title was so taken for the benefit of the estate, which received all the money realized exactly as would have been the case had the title been taken in its name.

The decree of the court below is affirmed and the appeals are dismissed, all the costs on both appeals and in the court below to be paid by appellants, except the prothonotary's costs and the cost of printing the record on the appeals to January Term, 1928, Nos. 188 and 196, one-third of which is to be paid by each of the appellants and the other one-third by appellees.