CITIZENS BANK OF LEES SUMMIT, ET AL., APPELLANTS, v. LYNN G. BUFORD ET AL., RESPONDENTS.—108 S. W. (2d) 1062.

Kansas City Court of Appeals. December 17, 1937.

*A. N. Gossett, Burrus & Burrus* and *Charles V. Garnett* for appellant.

*Fisher, Whitten & Keyes, John Thice* and *John H. Haley* for respondent.

SPERRY, C.—This is designated by plaintiffs as an equitable garnishment proceeding and was heard by the trial court without a jury, in equity. Judgment was for defendants and plaintiffs appealed.

The action seeks the application of a sum of money in the amount of $2060, held by the Circuit Clerk of Jackson County, to the discharge of a judgment in favor of plaintiffs and against defendant, Forest R. Noel. The money sought to be reached represents the proceeds of damages awarded against and paid by the State Highway Commission for the condemnation and appropriation of lands allegedly held in trust by defendant J. C. Noel, who will be known herein as trustee,

for the use and benefit of Forest R. Noel, who will be known as beneficiary. The land was originally owned by James W. Noel, whom we will call settler, who died testate in 1919, seized of the said property and whose will, which was executed in 1914, contained the following provision which is all of that instrument that is here in controversy, to wit:

"Item 4th: I give and devise unto my said son James C. Noel, in trust for the use and benefit of my son, Forest R. Noel, the following described real estate situated in Jackson County, Missouri, to wit:

"The North-east quarter of the North-west quarter of Section 22; also the south 60 acres of the West half of the south-east quarter and the South sixty acres of the East-half of the South-west quarter of Section 15, all in township 47, Range 30.

"I hereby direct that it shall be the duty of said trustee to pay the taxes and keep up all necessary and proper repairs on said premises out of the rents of said lands for the perior of fifteen years from this date, and to pay over annually or semi-annually as may seem best to said trustee the net rental of said premises unto the said Forest R. Noel. The said Forest R. Noel may occupy and use said premises for himself if he sees fit so to do, and in that event I enjoin it upon said trustee, or his successor in this trust, to see to it that the taxes are paid promptly and the premises kept in proper repair, and it hereby made his duty so to do; and the said Forest R. Noel may use and occupy said premises for himself as above provided only on condition that he pay such taxes and keep up such repairs. Said trustee in his discretion may permit said Forest R. Noel to select his own tenant and to rent said premises for a period of not exceeding three years, giving him the privileges of collecting and using as much as one year's rent in advance; and such arrangement may be continued from term to term in the discretion of said trustee during the life of this trust; but it shall not be incumbent upon said trustee to permit this to be done unless it meets the approval of his own judgment; nor shall he permit it to be done unless the taxes are paid promptly and the premises kept in proper repair.

"It is my will and I hereby direct that said Forest R. Noel shall have no power or authority to sell, mortgage, or otherwise encumber said premises during the life of this trust, nor shall he have any power to make any contract with reference to said real estate, other than' to lease the same for a period of not exceeding three years as above provided with the approval of said trustee as above provided; nor shall said real estate nor the income therefrom be liable for any debts of the said Forest R. Noel, which may be contracted during the life of this trust.

"If at the expiration of said period of fifteen years, the habits and

conduct of said Forest R. Noel are such as to indicate that he would not squander or dissipate said property if he had the absolute title thereto and control thereof, said trustee or his successor in this trust may convey said premises to said Forest R. Noel, to become henceforth his property in fee simple. But if on account of dissipation or other bad habits it shall appear to said trustee that it would be unwise for said Forest R. Noel to have such title to and control of said property, then this trust shall continue during the life of said Forest, unless he should in the meantime appear to be fully capable of taking care of said property.

"If this trust should not cease and determine during the life time of said Forest R. Noel, it shall be the duty of said trustee on the death of said Forest to convey said premises to such person or persons as he the said Forest may by will direct; and in default of such will, said trustee shall convey the said property to such persons as would have received the same under the law if he the said Forest had been possessed of the title to said premises in fee simple."

The abstract of the record contains 336 printed pages of testimony taken at the trial. It would be a task requiring more than ordinary literary ability to condense this mass of evidence within the reasonable bounds of a half volume. Therefore, we will summarize it briefly by saying that it showed that Trustee has actively supervised and administered the trust in accordance with the terms thereof; that the beneficiary was and still is improvident, wasteful, lazy, incompetent and prodigal; that he was no better qualified at the time of the trial to care for and preserve the trust estate left him than he was at the time his father died; that the trustee was and is fully justified, in view of the beneficiary's habits, deficiencies and shortcomings, in refusing to convey the property to him and in refusing to relinquish the trust; that if the beneficiary were given full control of the property he would squander and waste his patrimony and he and his family would soon be penniless; and that the trustee has been and now is capably and efficiently discharging his duties under the trust. The above was, succinctly stated, the conclusion of the trial court; and they are our findings based upon the record.

The instrument sets up a valid spendthrift trust. Plaintiffs agree that this would be true but for the last quoted paragraph of "Item 4th" of the will. They contend that this paragraph, in effect, creates a fee simple title at the death of beneficiary, for the reason that it permits alienation by beneficiary in his will, and rely on the case of Kessner et al. v. Phillips et al., 189 Mo. 515. In that case the land was conveyed by deed to *cestui que trust* directly, and provided for absolute vesting in him in fee after thirty years, provided it should not be liable for debts of *cestui que trust*, and, if he violated the terms

of the deed, it provided that the land should vest in grantors. At page 524 of the opinion, the court quoted from 26 Am. & Eng. Ency. of Law (2 Ed.), 139, as follows:

" 'This doctrine (of spendthrift trust) is, that it is lawful for a testator or grantor to create a trust estate for the life of the *cestui que trust*, with the provision that the latter shall receive and enjoy the avails at times and in amounts either fixed in the instrument or left to the discretion of the trustee, and that such avails shall not be subject to alienation by the beneficiary nor liable for his debts.' "

Applying the above rule to the facts in that case, the court held, l. c. 524, as follows:

"In order to create a spendthrift trust certain prerequisites must be observed, to wit: first, the gift to the donee must be only of the income. He must take no estate whatever, have nothing to alienate, have no right to possession, have no beneficial interest in the land, but only a qualified right to support, and an equitable interest only in the income; second, the legal title must be vested in a trustee; third, the trust must be an active one, not a mere dry trust which may be executed under the statute of uses."

. And, again, on page 525 of the opinion, the court says:

"The deed to the defendant Hudspeth, here involved, falls radically short of the requirements of the rule as to the creation of spendthrift trusts, and especially so in the following particulars; first, no trust estate is created; second, *no trustee is appointed;* third, *Hudspeth's interest is not limited to the enjoyment of the income, nor in his right simply a right to support;* fourth, *an absolute estate in fee simple is vested in Hudspeth;* fifth, Hudspeth is given the right of possession, *of managing and controlling the property, and of receiving the whole income therefrom without let or hindrance.* (Italics ours.)

"In short, the conveyance to Hudspeth is of the whole legal title with all the incidents and rights appurtenant thereto, with only a futile attempt to annex repugnant conditions thereto to the effect that the land shall not be liable for the payment of any debts he had, or might thereafter contract during a period of thirty years, and that he should not have power to sell, encumber or dispose of the property for a like period except by will, and with the further qualification that if he sold, or attempted to sell or encumber the property during that period the title shall immediately vest in the grantors."

A rather casual reading of the deed and of the decision in that case will indicate that the deed is fatally defective in several particulars, in the attempt to create a spendthrift trust, as pointed out by the court, so that it need not have been defective in all particulars mentioned in the opinion, to render it invalid as such. When compared with "item 4th" of the will here under consideration it is readily

apparent that the said "item 4th" without doubt meets such requirements of the Kessner case, supra, as we have italicised. Unless the last paragraph of "item 4th" conveys an alienable title to the beneficiary, as urged by plaintiffs, there is nothing in the will here considered that is inconsistent with the requirements of a valid spendthrift trust, as the same is defined in the Kessner case.

In the case of Gordon et al. v. Tate et al., 314 Mo. 508, l. c. 515, the court summarizes the holding in the Kessner case, supra, and refuses to apply such holding to the case then under consideration, which last-mentioned case is similar to the case at bar. But whether the Kessner case, supra, is to be distinguished from the case at bar, as we think, or whether it has, in effect, been overruled, is of no importance here for the point urged by plaintiffs is ruled against them squarely by Judge Tipton, speaking for the Supreme Court, in Krause v. Jeannette Inv. Co. et al., 333 Mo. 509, l. c. 515. It is there held that the power granted to the beneficiary by a trust instrument contained in a will, authorizing her to devise the trust property by will, does not vest the beneficiary with a fee and thus nullify the intended trust, because, it is said, the devisee of the said beneficiary does not take title from the beneficiary, but from the original settler. To the same effect is Armor et al. v. Frey, 253 Mo. 447, l. c. 473.

The development of the doctrine of spendthrift trusts has been slow and laborious, having had its first real origin in the attempt by the courts to protect married women's property from the husband and his creditors. The English rule is not so liberal as the American rule. There was a time when the decisions of the courts of Missouri seemed to be in confusion on the whole subject. But in the case of Lambert v. Haydel, 96 Mo. 439, and in the case of Partridge v. Cavender, 96 Mo. 452, it was definitely held that the intention of the settler, as gathered from the four corners of the will, shall determine whether a trust is created; and that such a trust estate may be created by the settler, prohibiting alienation of the *corpus* of the estate, or of the income therefrom. It was at this time that Missouri can be definitely said to have adopted the American rule, following the United States Supreme Court in the case of Nichols v. Eaton, 91 U. S. 716.

The law of Missouri in respect to spendthrift trusts is thoroughly reviewed by the U. S. Circuit Court of Appeals in the cases of Jones v. Harrison, and Jones v. Ready, 7 Fed. (2d) 461. It is there held that the name "spendthrift trust" is, in fact, a misnomer and that if it is the intent of the settler to restrict the property so as to keep it from creditors or from being alienated by the beneficiary, then the habits of the beneficiary as to being a spendthrift or otherwise, are not material. The courts will determine whether or not there is a trust created solely from the intent of the testator as gathered from all

four corners of the will; and the mere fact of the attempt to create a trust would tend to show an intent to do so; and but slight restrictions are necessary and the court will be liberal in discovering same.

There is no question but that settler here intended to set up a trust estate in this land for the benefit of his son; no question but that he limited the estate thus created; and it is equally clear, from the language used and from the decisions of the courts of this state, that settler did not vest beneficiary with a fee simple title. The title cannot be alienated by him, but can only be transferred by deed of the trustee. The title, until the trustee deeds it to the beneficiary, or to whomever beneficiary wills, cannot be seized by creditors of the beneficiary, either legally or equitably, for the reason that the beneficiary has no title. It could only be attached by a creditor of testator; but testator had the right to make whatever disposition of it he saw fit. He has exercised that right by placing it beyond the reach of any creditor of the beneficiary and beyond the reach of the beneficiary himself during the life of the trust, which will not end until the trustee, in his good judgment, sees fit to transfer title to him.

The fund sought to be reached is, in effect, a part of the *corpus* of the trust, and is conceded to be so. It can no more be reached by garnishment, legal or equitable, than could the land itself be reached; this applies to every foot of land and to every dollar of the proceeds from the condemnation thereof.

The judgment is affirmed. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion by SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.